[S. F. No. 20975. In Bank. July 19, 1962.]

HENRY SUEZAKI et al., Petitioners, v. THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent; STANLEY L. CRAWFORD et al., Real Parties in Interest.

Lewis & Fonnesbeck, Joseph F. Lewis and William B. Boone for Petitioners.

No appearance for Respondent.

Popelka, Graham, Hanifin & Bonney, B. J. Cougill and Geoffrey Van Loucks for Real Parties in Interest.

PETERS, J.—Petitioners Henry Suezaki and Grace Suezaki are plaintiffs, and Stanley L. Crawford and Golden State Leasing Company (the real parties in interest herein) are defendants in an action for personal injuries pending in the respondent court. Defendants' attorney hired an investigator to take motion pictures of plaintiff (Henry) without the latter's knowledge. By the use of interrogatories, answers to which, over defendants' objections, were compelled by the trial court, plaintiffs discovered the existence of the films, that they had been taken by an independent investigator, and delivered by him to defendants' attorney. Plaintiffs then filed a motion asking for the production and inspection of the

films under the provisions of section 2031 of the Code of Civil Procedure.[1] The motion was supported by a proper affidavit. Defendants opposed the motion. In their supporting affidavit the only opposition stated was that the films had been "communicated to [attorney for defendants] for the confidential use in the preparation of the defense. . . ." The motion was denied, and plaintiffs (as petitioners herein) seek a writ of mandate requiring respondent court to authorize the inspection.

The record makes it abundantly clear that the denial was predicated solely on the belief of the trial court that the film was a privileged communication, and protected from discovery under the provisions of subdivision 2 of section 1881 of the Code of Civil Procedure.[2] This fact appears not only in the memorandum opinion filed by respondent court, but in the trial judge's remarks at the time of oral argument on the motion. In other words, although the trial judge impliedly found that the film was within the scope of the examination permitted by subdivision (b) of section 2016, and also that he was satisfied that plaintiffs had made a sufficient showing of good cause for inspection, he was powerless to grant inspection under the rules announced in *Holm* v. *Superior Court*, 42 Cal.2d 500 [267 P.2d 1025, 268 P.2d 722], and in *Grand Lake Drive In, Inc.* v. *Superior Court*, 179 Cal.App.2d 122 [3 Cal.Rptr. 621]. Those two cases he interpreted as requiring the conclusion that the film was a privileged communication, and therefore not discoverable.

On this petition, plaintiffs contend that they are entitled to inspection as a matter of law. Defendants, on the other hand,

---

[1]The pertinent portions of section 2031 read as follows: "Upon motion of any party showing good cause therefor, . . . and subject to the provisions of subdivision (b) of Section 2019 of this code, the court in which an action is pending may . . . order any party to produce and permit the inspection . . . of any designated . . . photographs, objects or tangible things, not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by subdivision (b) of Section 2016 of this code and which are in his possession, custody, or control; . . . The order shall specify the time, place, and manner of making the inspection . . . and may prescribe such terms and conditions as are just."
The pertinent portions of sections 2016 and 2019, referred to in this quoted passage from section 2031 are discussed later in this opinion.

[2]Subdivision 2 of section 1881 reads: "An attorney can not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment; nor can an attorney's secretary, stenographer, or clerk be examined, without the consent of his employer, concerning any fact the knowledge of which has been acquired in such capacity."

contend that the order under review must be sustained because: (a) the facts indicate that there was no abuse of discretion; (b) the attorney-client privilege gives complete protection to the films; and (c) plaintiffs failed to show good cause for inspection. Neither party is entirely correct.

*The issue as to good cause:*

Good cause for the inspection must, of course, be shown by the moving party (Code Civ. Proc., § 2031, *supra*; *Greyhound Corp.* v. *Superior Court,* 56 Cal.2d 355, 373-374, 388-391 [15 Cal.Rptr. 90, 364 P.2d 266]). The nature and extent of the showing necessary to satisfy that requirement must, of necessity, vary with the circumstances presented in each individual case. Plaintiffs assert that they sustained this burden under the rule announced in the *Greyhound* case at page 388, where it was stated: "It follows that the good cause which must be shown should be such that will satisfy an impartial tribunal that the request may be granted without abuse of the inherent rights of the adversary. There is no requirement, or necessity, for a further showing." These two sentences do not stand alone. The court was there discussing the fact that certain vehicles of discovery require a motion based on a showing of good cause, while others do not. It was pointed out that the reason for such distinction was to prevent abuse in those situations where it would be most likely to occur. Read in context, the two quoted sentences mean that *in addition to the requirement that the material sought be "within the scope of the examination permitted by subdivision (b) of Section 2016,"*[3] the party seeking disclosure need show no more than that discovery "may be granted without abuse of the inherent rights of the adversary." The statute confines all vehicles of discovery to those matters which are "relevant to the subject matter involved in the pending action," and authorizes discovery of facts or matters which will not be admissible at the trial if the same are not privileged, but appear "reasonably calculated to lead to the discovery of admissible evidence . . ." regardless of whether such relates to a claim or a defense. The same subdivision also incorporates those provisions of section 2019 which authorize the trial court to exercise its discretion in protecting parties from abuse or from any unjust or inequitable situation which might otherwise arise. It

---

[3]Incorporated by reference into section 2031. See footnote 1, *supra.*

follows that in each case involving a motion for an order authorizing inspection there must be a showing that the thing sought to be inspected comes within the general classification of matters subject to discovery, and that inspection may be had without violence to equity, justice, or the inherent rights of the adversary. As also said in *Greyhound* (at p. 389), such good cause may be shown in any manner consistent with the established rules of pleading and practice.

 In the present case, under the showing made, the trial court found good cause to exist. It is true that its order is silent as to any such showing, but that is so because its conclusion that the films were privileged made such factor moot. However, at several points during the oral argument the trial judge stated that he was satisfied that plaintiffs had shown a need for the films both in order to protect against surprise, and in order to prepare for examination of the person who took the pictures. Such a finding is entirely consistent with the purposes of the discovery act, and supported by the showing made.

*The films are not protected by the attorney-client privilege:*

As indicated above, defendants urged and the trial court held that the rules announced in the *Holm* and the *Grand Lake* decisions required the conclusion that the films are within the attorney-client privilege. Such conclusion is unsound.

*Grand Lake* (*supra*, 179 Cal.App.2d 122) is not in point on this issue. In that case the defendant hired an expert to examine and report on the "slipperiness" of the premises on which plaintiff was alleged to have been injured. Plaintiff took the expert's deposition and asked several questions about the witness's findings, which questions the expert refused to answer on the ground that his findings were a part of a privileged report. The sole question before the court (insofar as the decision is pertinent to privilege) was whether or not the attorney-client privilege extended to such situation. Before determining that the privilege was not applicable, Justice Draper, the author of the opinion, carefully pointed out, at page 125 (in a passage quoted by respondent court in its memorandum decision herein), that none of the questions called for the report which the expert had made to defendant's counsel, and that plaintiff specifically disclaimed any desire to inquire into that report. It was then stated: "Thus no question as to the confidential character of any written or oral

communications from the expert to the attorney who employed him is before us." Thus, the court refused to consider the claimed confidentiality of matter transmitted from expert to attorney. This being so, the *Grand Lake* decision is not an authority for the proposition that the motion picture film involved herein is protected by the privilege.

The *Holm* case (*supra*, 42 Cal.2d 500) involved a motion for inspection of several items gathered by the investigator, or claims adjuster, who was a regular employee of the San Francisco Municipal Railway, and which had then been transmitted in a report to the city attorney for the purpose of conducting the defense of a lawsuit arising out of a bus accident. Among the items plaintiff sought to inspect were her own written statement given to the investigator after the accident, the written report of the bus driver to the city setting forth his version of the accident, and a photograph of the scene of the accident taken by agents of the city. Because the decision therein held that the photograph was subject to the attorney-client privilege, it is here urged as controlling.[4] But the fortuitous similarity between a photograph and a motion picture constitute the sole similarity between *Holm* and the instant case. The underlying facts differ in the two cases.

When *Holm* was decided the present discovery statutes had not yet been passed. The only inspection then permitted was under old section 1000 of the Code of Civil Procedure, since repealed. The distinctions between the old law and the present one have already been pointed out (see *Greyhound* and its several companion cases in 56 Cal.2d, commencing at p. 355). The only applicability of the *Holm* decision to discovery today is that portion of the opinion that deals with the attorney-client privilege. The 1957 discovery act provides (in subd. (b) of § 2016) that nothing contained therein should be construed as changing the law of this state with respect to the existence of any privilege. Thus *Holm* is not persuasive on any issue of discovery but is in point, if at all, only on the issue of privilege.

Insofar as privilege is concerned, *Holm* involved a situation

---

[4]The memorandum decision of the respondent court in the instant case also states that in the *Greyhound* decision (*supra*, 56 Cal.2d 355) this court expressed some doubt as to the propriety of that portion of the *Holm* decision, but failed to overrule it. There was nothing in the facts of the *Greyhound* case which required this court to pass upon the discoverability of a photograph which was included in a report rendered to an attorney. At page 399 of that opinion it was expressly stated that this court was not then concerned with that phase of the *Holm* case.

where the party claiming the privilege was a body politic (City and County of San Francisco), and the material which plaintiff there sought to discover was obtained by, or emanated from, its employees. Plaintiff claimed that the material was gathered in the regular course of business, and not for the purpose of making a confidential communication to the city's attorney. Since a body politic, like a corporation, can act only through its officers and employees, the court was not faced with the situation (existing here) where a party litigant, or his attorney, hired an independent investigator to gather and report information for the purpose of trial preparation. In *Holm* the court was faced with the problem of determining whether the employee, when gathering his information and making his report, stood in the shoes of his corporate employer, and was making a confidential communication to his attorney in the course of professional employment, or whether he was acting as a mere employee who was required to gather information in the regular course of business, without reference to the existence of litigation or attorneys. If he was acting in the former capacity, that portion of his report which was otherwise confidential would certainly be protected by the attorney-client privilege, and the attorney could not divulge the same without a waiver by the client. If, on the other hand, he was collecting information in the regular course of business, the fact that a copy of his report was ultimately transmitted to the attorney could not have the effect of creating a privilege where none previously existed (*Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d 355, and cases cited therein at p. 397). Based on this distinction, this court, in the *Holm* case, adopted the "dominant purpose" rule for the sole purpose of determining the capacity in which the employee was acting when he gathered the information and made his report. Having satisfied itself, under the facts, that the dominant purpose in having the employee investigate and report was to communicate the facts to the city's attorney for the purpose of anticipated litigation, the court then held that the bulk of that report came within the purview of the attorney-client privilege. But the "dominant purpose" doctrine has no applicability to any situation other than one where an officer, agent or employee of a corporation (or body politic), which cannot speak except through such an individual, makes a report to the employer's attorney. It is inapplicable to a natural person who communicates confidentialities to his attorney and to an expert hired by a litigant

(natural or corporate) for the purpose of studying or examining a given situation and making a report thereon.[5] For in neither of those cases is it necessary to resort to any rule of "dominant purpose" in order to determine the primary purpose of the litigant in gathering and communicating the information.

In *Holm*, after determining that the dominant purpose of the investigation was to gather information for transmittal to the attorney, the court then looked further, in order to determine what portions of the transmitted information might be exempt from the privilege for other reasons. It held that plaintiff's written and signed statement, given to the investigator after the accident, could not be privileged even though made a portion of the communication to the attorney, for the reason that it was not intended as confidential when given, and could not gain confidentiality by reason of the fact that it was included in a report containing other matters intended as confidential. On the other hand, the court concluded that the written report of the bus driver, containing his version of the accident, was tantamount to the client's communication to the attorney, intended as confidential in its inception. This it held to be within the protection of the privilege. But little attention was paid by the court to the photograph while discussing these points. The photograph is mentioned at the commencement of the opinion as being one of the items sought to be inspected, and again at the conclusion as an item subject to the privilege. Little mention of it is to be found between these two points. Neither do the separate opinions (one concurring and dissenting, the other dissenting), which would have granted inspection of everything requested, treat the photograph as distinct from the report with which it was transmitted. It is likely that but little attention was paid to the photograph simply because the litigants addressed their arguments to the plaintiff's written statement and to the bus driver's written report, and paid but scant attention to the photograph. No other interpretation explains why a photograph of a public street, even if deemed to be a "communication," was held to represent a "confidential" subject matter.

---

[5]The instant case does not require a determination of the privileged character of a report made by an expert hired for the purpose of litigation, since plaintiffs seek the actual film, and not the report, if any, by which it was transmitted. For discussion of such reports, see *Oceanside Union School Dist.* v. *Superior Court, post,* p. 180 [23 Cal.Rptr. 375, 373 P.2d 439], and *San Diego Professional Assn.* v. *Superior Court, post,* p. 194 [23 Cal.Rptr. 384, 373 P.2d 448], both decided this day.

It is apparent, therefore, that the *Holm* case, insofar as it holds the photograph was privileged, is distinguishable from the ordinary case in which pictures are taken in preparation for litigation. In spite of this distinction, it is apparent that there exists some confusion as to the precise holding of *Holm* in regard to the privileged nature of photographs. ▉ In the instant case, the trial court was of the opinion that all photographs taken by an investigator and transmitted to an attorney for use on trial are privileged under the rule announced in that case. This view is, perhaps, shared by others. If *Holm* is susceptible to that interpretation it should be overruled on this point. A picture of a public bus on a public street is not a confidential communication. Therefore, insofar as the *Holm* case may be interpreted to hold that any photograph taken for the purpose of litigation and transmitted to an attorney is privileged, per se, it is disapproved. For the same reason we disapprove the holding in *Carroll* v. *Superior Court*, 42 Cal.2d 874 [267 P.2d 1073], a memorandum decision based solely upon *Holm*.

Thus, the only reason given by the trial court for the denial of the motion—a belief that *Holm* was controlling—was incorrect. But this does not entirely dispose of the issue of privilege. ▉▉ Obviously, if the films are in fact privileged for any reason, they are not discoverable. Therefore, we must determine whether any other basis for the privilege exists. This requires some analysis of the exact nature of the films here involved.

▉ It is quite clear that although the investigator, the attorney and his client may have intended the films to be confidential, to be privileged they must constitute a "communication made by the client to [the attorney]" as that phrase is used in section 1881. The film here involved obviously was not such a "communication." It is simply a physical object transmitted to the attorney either with or without an accompanying report or letter of transmittal. ▉ As already pointed out, transmission alone, even where the parties intend the matter to be confidential, cannot create the privilege if none, in fact, exists. ▉ Moreover, even if the picture itself were to be deemed a "communication," it cannot be said to be one from client to the attorney. This is so not because the transmittal was from the investigator and not from the client, for there are many situations in which a communication made by an agent for the client is deemed to be the communication of the client for the purpose of determining privi-

lege. The matter is privileged if the agent is required to communicate to the attorney something *from* the client which the latter is unable to communicate himself, or where the communication can better be transmitted through a specialist. In such case, the subject matter of the communication is either the client himself (as in a report of a physical or mental examination, X-ray or blood test; see *City & County of San Francisco* v. *Superior Court*, 37 Cal.2d 227 [231 P.2d 26, 25 A.L.R.2d 1418]), or facts or impressions emanating from the client to the agent and by him transmitted to the attorney. In these cases it is as if the client himself transmitted the material to his attorney. The communication is then privileged because the statute is designed to encourage, and protect, disclosure by the client to his attorney. But that is not the instant case. Here, the film cannot be said to be a communication made by the agent of something the client would have transmitted himself had he been in a position so to do. The films are not a graphic representation of the defendants, their activities, their mental impressions, anything within their knowledge, or of anything owned by them. The films are representations of the plaintiff, not of the defendants. If they can be said to be a "communication" in any sense of the word, they represent an unconscious and unintended "communication" from plaintiff. Certainly, there is nothing in subdivision 2 of section 1881 of the Code of Civil Procedure (or in the cases interpreting it) that can be said to create a privilege in a communication from a litigant to his adversary's attorney.

The defendants, however, approach the problem from another angle. They urge that, even if the films are not privileged for other reasons, they are privileged solely because they are the "work product" of their attorney. In this connection they point out that without question their attorney had the films taken solely as part of his trial preparation, and that they were intended to be confidential. They urge that undoubtedly the films were the result of the work product of the attorney, which is correct, and contend that for that reason alone they are privileged as a matter of law, which is incorrect.

 In the *Greyhound* case (pp. 399-401) it was made abundantly clear that simply because the subject matter sought to be discovered is the "work product" of the attorney it is not privileged. It was there pointed out that if the subject matter involved is the work product of the at-

torney that is a factor that the trial court should consider, in its discretion, together with other relevant factors, in determining whether to deny or to grant discovery in whole or in part.[6] But it also was pointed out that "work product" of the attorney is not absolutely privileged. In this connection, it was expressly held in *Greyhound* (p. 401) that, insofar as *Hickman* v. *Taylor,* 329 U.S. 495 [67 S.Ct. 385, 91 L.Ed. 451], held to the contrary under federal law, it was not the law of California. This distinction between considering "work product" as privileged, and considering it as a factor in determining whether to grant or deny discovery is not one of words only. Were "work product" to be deemed a rule of privilege in California, then whenever the fact of "work product" was found to exist, the court would be compelled to deny discovery as a matter of law. But under the California rule, the trial court may consider the facts on which a claim of "work product" is predicated, and exercise the discretion granted by the provisions of the discovery statutes in order to prevent abuse and to reach a determination consistent with equity and justice. This simply means that in California the fact that the material sought to be discovered is the "work product" of the attorney is one factor to be used by the trial court in the exercise of its discretion in determining whether or not discovery should be granted. It does not mean that, simply because the material involved is the "work product" of the attorney, it can or should deny discovery. Something more must exist. The trial court must consider all the relevant factors involved and then determine whether, under all the circumstances, discovery would or would not be fair and equitable. This is made quite clear even in the case of *Hickman* v. *Taylor,* relied upon so strongly by defendants. They interpret that case to mean that all "work product" is nondiscoverable. The case did not so hold. It limited its rule of nondiscoverability to those portions of the attorney's files containing material disclosing the mental processes of the attorney formed while he was interviewing witnesses, and stressed the fact that the discovery there sought would be tantamount to compelling the attorney to become a witness. Such matters should not be discoverable under the California rule. But there is nothing in *Hickman*

---

[6]That confusion exists as to this holding in *Greyhound* is illustrated by the article entitled *Lawyers' Work Product* by Pruitt in the State Bar Journal, vol. 37, no. 2, page 228. There it is erroneously implied that the *Greyhound* decision removed all legal protection to the "work product" of attorneys.

v. *Taylor* that holds or implies that a film such as the one here involved would not be discoverable under the federal rules. In fact, the inference is to the contrary.

*Discretion of the trial court:*

Defendants' final contention is that there has been no showing that respondent court abused its discretion herein. A more correct statement would be that the trial court expressly refused to exercise any discretion because of its erroneously held opinion that it had no discretion but was bound to deny the motion for inspection as a matter of law. Thus the order under review must be set aside. But we should not order the inspection as a matter of law. While it would appear that inspection of the films should be permitted, the discretion granted by the statute is the discretion of the trial court, not of this court. Therefore, the matter should be referred back to the trial court to permit it to exercise its discretion as conferred by statute, and to permit it to decide whether on the showing that has or may be made it should deny, grant, or conditionally grant the order.

The alternative writ is discharged. A peremptory writ of mandate is granted requiring the respondent court to vacate its order, and to enter a new and further order consistent with the rules of law as expressed in this opinion.

Gibson, C. J., Traynor, J., Schauer, J., and White, J., concurred.

McCOMB, J.—I dissent. I would deny the writ.