[L. A. No. 27214. In Bank. June 27, 1963.]

CHALCO-CALIFORNIA CORPORATION, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; NORTH AMERICAN AVIATION, INC., Real Party in Interest.

Mitchell, Silberberg & Knupp and Allen Kaufman for Petitioner.

No appearance for Respondent.

Flint & MacKay and Arch R. Tuthill for Real Party in Interest.

SCHAUER, J.—Petitioner in this mandamus proceeding, hereinafter referred to as plaintiff, seeks to compel the superior court to grant its motion for an order directing the production for inspection and copying of certain documents in the files of North American Aviation, Inc., the real party in interest, hereinafter called defendant.[1] The subject documents relate to a contract between defendant and one Varo, Inc., hereinafter sometimes called Varo. As will appear, we have concluded that plaintiff has failed to show an abuse of discretion by the trial court in its denial of plaintiff's motion. Accordingly, the writ sought should be denied.

In March 1962 plaintiff commenced an action against defendant for breach of contract, reasonable value of services and materials, conversion, breach of confidential relationship and copyright infringement. The complaint sets forth four alleged causes of action. The first count alleges, in substance, that in August 1960 the parties agreed in writing that plaintiff was to manufacture nine power supply units for defendant according to defendant's "B" specifications and at a stated price; that under such written agreement defendant reserved "the right at any time to make changes in the drawings and specifications" in which event "there will be made an equitable adjustment in price and time of performance mutually satisfactory" to plaintiff and defendant; that

---

[1]Although the superior court is, of course, the respondent or "defendant" in this proceeding (Code Civ. Proc., § 1063) it makes for clarity and consistency in identification of the respective parties at both levels to refer to North American (which is defendant below) as the defendant here. Chalco is plaintiff here as well as in the superior court.

on October 28, 1960, defendant "orally authorized plaintiff to incorporate the [defendant's] 'C' specifications into its plans, and on or about November 1, 1960 . . . confirmed the said authority in writing"; that defendant on November 22, 1960, reduced the order from nine to three units and finally, on July 5, 1961, cancelled the agreement, whereupon plaintiff tendered delivery of one complete unit and stopped work on the other two in order to mitigate its damages; and that plaintiff is now entitled to recover its costs and profits in accordance with the terms of the contract. The second cause of action incorporates the first, and is in the nature of a common count. The fourth cause incorporates the first and is based on plaintiff's claim for compensation for its services with respect to the six units terminated by defendant.

Plaintiff's third cause of action incorporates the first, and alleges that under a provision of the written agreement so permitting, defendant North American on December 1, 1960, requested copies of all of plaintiff's drawings, representing that it wished to review them; that plaintiff submitted 29 drawings prepared by it for use in performing its contract; that defendant's representation was false "in that North American's purpose in requesting the said drawings was to transfer and deliver them to one Varo, Inc., in order to enable Varo, Inc. to manufacture power supply units for North American by use of the same"; that plaintiff owns the drawings, which are "novel, unique and original"; that it is informed and believes and therefore alleges, "that North American thereafter fraudulently, maliciously, and in breach of its confidential relationship with plaintiff, transferred and delivered the said 29 drawings to Varo, Inc. in order to enable Varo, Inc. to manufacture power supply units for North American by the use of the same, all without the permission of plaintiff . . . and . . . Varo, Inc. thereafter accepted and retained dominion over the same, and used the same in manufacturing power supply units for North American, all without the permission of plaintiff"; and that the reasonable value of the drawings is $134,720. The prayer based on this cause of action is for that amount plus $100,000 exemplary damages.

Defendant's answer admits its agreement with plaintiff; alleges that the unit tendered by plaintiff was "mechanically" and "functionally" tested and found to be defective; and denies it is indebted to plaintiff as alleged. With respect to the third cause of action defendant admits that it

requested and received the drawings for review, but denies the other allegations. Varo, Inc., is not a party to the action.

After issue was joined, as related, plaintiff (on August 1, 1962) served and filed a notice of motion, with supporting affidavits[2] and memorandum of points and authorities, for an order requiring defendant to produce various documents for inspection and copying relating to *defendant's contract with Varo*. Plaintiff's itemization of these documents is set forth in the footnote.[3] Defendant filed opposition to the motion, with supporting affidavit and points and authorities.

Thereafter various affidavits were filed by the parties, and on October 5, 1962, the trial court entered its memorandum and order finding that defendant had established that certain documents in the files of defendant's legal department (sought as item 7 of plaintiff's motion for inspection) were privileged, and that as to them plaintiff's motion "must be denied," but ordering the filing by the parties of further affidavits with respect to the other items listed in plaintiff's notice of motion. The parties submitted further affidavits accordingly, and thereafter, on December 7, 1962, the court entered its order denying plaintiff's motion. Plaintiff thereupon instituted this mandamus proceeding, claiming that as a matter of law it is entitled to inspect and copy the docu-

---

[2] For clarity and brevity the term "affidavit" will be used in this opinion to include and designate declarations made under penalty of perjury.

[3] (1) Request for quotation from Varo, Inc., dated on or about October 14, 1960, from defendant to Varo, Inc.

(2) Varo, Inc., quotation to defendant dated on or about October 28, 1960.

(3) Letter contract between defendant and Varo, Inc., dated on or about November 21, 1960.

(4) All correspondence between defendant and Varo, Inc., with respect to letter contract between defendant and Varo, Inc., dated on or about November 21, 1960, and performance thereunder.

(5) All interoffice letters and engineering documents of defendant with respect to letter contract between defendant and Varo, Inc., dated on or about November 21, 1960, and performance thereunder.

(6) All documents in the files of the engineering department of defendant with respect to the contract between the parties.

(7) All documents in the files of the legal department of defendant with respect to the contract between the parties, and performance thereunder.

(8) Specifications in connection with contract between defendant and Varo, Inc., dated on or about November 21, 1960, together with all modifications and amendments thereto.

From the briefs and the record herein it appears that the "parties" referred to in items (6) and (7) are defendant and Varo, Inc.

ments as sought by it, and that denial of its motion constitutes abuse of discretion.

Section 2031 of the Code of Civil Procedure provides that "Upon motion of any party showing good cause therefor . . . the court . . . may order any [other] party to produce and permit the inspection and copying . . . of any designated documents . . . not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by subdivision (b) of section 2016 of this code. . . ." ▮ As recently declared in *Suezaki* v. *Superior Court* (1962) 58 Cal.2d 166, 171-172 [4, 5] [23 Cal.Rptr. 368, 373 P.2d 432], "The statute confines all vehicles of discovery to those matters which are 'relevant to the subject matter involved in the pending action,' and authorizes discovery of facts or matters which will not be admissible at the trial if the same are not privileged, but appear 'reasonably calculated to lead to the discovery of admissible evidence . . .' regardless of whether such relates to a claim or a defense. The same subdivision [see subdivision (b) of section 2031, and subdivision (b) of section 2016] also incorporates those provisions of section 2019 which authorize the trial court to exercise its discretion in protecting parties from abuse or from any unjust or inequitable situation which might otherwise arise. ▮ [5] It follows that in each case involving a motion for an order authorizing inspection there must be a showing that the thing sought to be inspected comes within the general classification of matters subject to discovery, and that inspection may be had without violence to equity, justice, or the inherent rights of the adversary." ▮ Further, "Good cause for the inspection must, of course, be shown by the moving party [citations]. ▮ The nature and extent of the showing necessary to satisfy that requirement must, of necessity, vary with the circumstances presented in each individual case." (*Suezaki* v. *Superior Court* (1962), *supra*, 58 Cal.2d 166, 171 [1, 2].) ▮ The discretion involved is that of the trial court, rather than of this court, and encompasses within its scope both the showing of good cause by the moving party and the protection of the adversary from abuse, injustice, inequity and violation of his inherent rights. (*Suezaki* v. *Superior Court* (1962), *supra*, p. 171 [4], p. 179 [18]; *Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 379 [20] [15 Cal.Rptr. 90, 364 P.2d 266].)

The affidavits first submitted by plaintiff in support of its application to inspect and copy were two in number. That of Allen Kaufman, one of plaintiff's attorneys, alleges among other things that "Plaintiff has just learned, for the first time, that on or about October 21, 1960 defendant requested a quotation from Varo, Inc. . . . for the same units which were in the course of production by plaintiff; that thereafter on October 28, 1960 defendant received a quotation from Varo, Inc.; and that on November 21, 1960 defendant entered into a letter contract with Varo, Inc. These facts strongly suggest that defendant's conduct during the course of performance by plaintiff was designed to hinder and impair performance by plaintiff; and that defendant was motivated by a desire to induce an ostensible breach on the part of plaintiff in order to avoid double liability for the units. This implication becomes even stronger if the quotation by Varo, Inc. was at a substantially lower price than that by plaintiff"; that plaintiff claims defendant's inspection procedures with reference to the unit produced by plaintiff "were unduly severe and designed in order to create a rejection," and comparison with defendant's inspection procedures on units produced by Varo would be relevant to this issue; that one of the issues in the action "is whether or not the performance of the unit produced by plaintiff was acceptable. The standard of acceptable performance in a highly technical area, such as that involved in the present action, is a matter of judgment, and comparison with an identical or very similar technical task is highly probative of this issue. The Varo procurement involved either an identical or very similar item to that called for under the contract in litigation." With respect to plaintiff's claim that defendant converted plaintiff's drawings and delivered them to Varo, attorney Kaufman avers that "Plaintiff's design included at least one unique circuit that advanced the state of the art, without which Varo could not meet the efficiency requirements of the specification. If this identical circuitry were employed by Varo, Inc. it would raise a strong inference that the Varo engineers were exposed to plaintiff's design." It must be noted, however, that attorney Kaufman sets forth no expert technical qualifications to make such an averment. With respect to item (7) of the documents sought by plaintiff (those in the files of defendant's legal department), the sole showing is Mr. Kaufman's unelaborated assertion that defendant "has material" in such files "which deal with the issues between the parties."

Mr. Gottlieb, assistant general manager of plaintiff corporation, in his affidavit states among other things that plaintiff can obtain the facts with respect to its claim of wrongful delivery of its drawings to Varo only by examining the documents in defendant's files having to do with the dealings between defendant and Varo concerning the subject units, as the offices of Varo are located in Texas; that such documents will show that Varo "was required to manufacture items which had already been designed by plaintiff. The said design was highly unique and original and *could be used only on a contract calling for the same item* [italics added]. . . . If the correspondence and engineering drawings of Varo, Inc. should disclose that the design of Varo, Inc. was identical to that of plaintiff, this in itself would be strongly evidentiary as to Varo, Inc.'s use of plaintiff's design. Plaintiff would then be able to introduce expert testimony . . . that it was virtually impossible that two sets of engineers working independently should arrive at exactly the same solution to such a highly complex problem." Further, the affidavit asserts, the documents concerning dealings between defendant and Varo "are relevant to the subject matter and reasonably calculated to lead to the discovery of admissible evidence on the issue of damages" alleged in plaintiff's first, second and fourth causes of action, in that Varo's experience and costs in producing the power supply units would assist in establishing the reasonableness of plaintiff's claims for payment for its own work and product, as well as reasonableness of defendant's inspection procedures as applied to plaintiff's product. Such documents would also, according to Gottlieb, assist in determining the truth or falsity of plaintiff's claims, and defendant's denials, that defendant authorized plaintiff to incorporate the ''C'' specifications into its plans on October 28, 1960, and encouraged plaintiff to work to ''C'' specifications —since, if it is shown that defendant was requesting a quotation from Varo with respect to ''C'' specifications plaintiff's claim that it was likewise urged to perform to ''C'' specifications rather than to ''B'' specifications would be supported, as both plaintiff's and Varo's ''units were to be utilized for the same purpose.''

Defendant filed opposition to plaintiff's motion to inspect and copy, asserting the "arrangements" made by defendant with Varo "for the procurement of power supplies could not possibly shed any light whatever on the matter of plaintiff's performance or excuse for nonperformance or the

issues of breach or damages''; that plaintiff's performance or lack thereof and any valid excuse for nonperformance, as well as any breach of contract by defendant, are to be determined by the contractual agreements between the parties, with which defendant's contracts with Varo have nothing to do; that neither are the Varo contracts and documents relevant to plaintiff's third cause of action alleging that defendant requested plaintiff's drawings and thereafter delivered them to Varo, since, if the drawings are of any value and defendant is obliged to pay plaintiff for them, it is immaterial what use defendant made of the drawings; that, further, defendant's dealings with Varo will not establish whether or not defendant authorized plaintiff to ''incorporate'' the ''C'' specification, as plaintiff claims; that plaintiff has not established good cause to inspect and copy the Varo documents; and that the documents in defendant's legal files with respect thereto are confidential and privileged.

In support of its opposition to plaintiff's motion defendant also submitted the affidavit of its assistant general counsel that he was the attorney on defendant's ''permanent legal staff primarily responsible for the handling of legal problems arising out of'' the contract between plaintiff and defendant and ''for securing reports from various'' of defendant's departments involved with such contract and performance thereunder and with the ''duty to give legal advice to'' defendant's personnel directly involved in the dealings with plaintiff; that a certain 37 itemized and described documents in defendant's legal files are privileged; that they are confidential reports, letters, summaries and memoranda prepared by defendant's employes at his request or by himself as defendant's corporate counsel and also for the attorneys handling this litigation for defendant.

Thereafter the trial court, on October 5, 1962, filed its memorandum and order wherein it holds, first, that the bare assertion in the affidavit of plaintiff's counsel that ''defendant has material in the files of its Legal Department which deal with the issues between the parties,'' when coupled with plaintiff's failure to challenge defendant's showing that such material is privileged, requires a finding that the documents in the legal file are privileged and that as to them plaintiff's motion must be denied. The court then notes that ''The main thrust of Chalco's [plaintiff's] argument is that the documents it seeks to inspect may lead to the discovery of admissible evidence,'' points out that defendant does not deny

the existence of the documents listed by plaintiff or that they relate to the production by Varo for defendant of certain power supply units, and that defendant claims only that plaintiff has not made a sufficient showing that any of such documents are relevant to the subject matter of this action or that inspection would lead to the discovery of admissible evidence.

Further, specifies the court: The weakness in plaintiff's showing in support of its motion lies in its assumption that in November 1960 defendant entered into a contract with Varo for the production of "the same units which were in course of production by plaintiff" under its contract with defendant. "This assumption, unsupported by any showing that it is based on any known facts, is implicit in the allegations of" plaintiff's third cause of action (conversion of its drawings), the affidavits filed on its behalf, and the arguments of its counsel. "A finding that all the documents described in Chalco's motion are relevant to the subject matter involved in the pending action, and that Chalco has shown good cause for an order permitting it to inspect all of those documents, cannot be based on any such unfounded assumption of fact.

"Counsel for Chalco alleges . . . that 'the Varo procurement involved either an identical or very similar item to that called for under the contract in litigation.' If this is a fact, it may be that Chalco *may have the right to inspect some of the records* of North American [defendant] relating to its dealings with Varo, Inc. At the same time, Chalco *is not entitled to inspection of all the records* described in its notice of motion in order to determine whether that is the fact. [Italics added.]

"Chalco alleges in its complaint that 'on or about August 22, 1960 plaintiff and North American entered into a written agreement which provided . . . that plaintiff was to manufacture to North American's "B" specifications . . . nine (9) power supply units . . .' and that 'on October 28, 1960 North American orally authorized plaintiff to incorporate the "C" specifications into its plans, and on or about November 1, 1960 North American confirmed the said authority in writing.' . . . It is this contract which is the 'subject matter of the pending action.' In order to determine whether the Varo contract involved either the same or a very similar item as that called for by the Chalco contract, *inspection of the portions of those two contracts which are material to that issue is necessary.*" (Italics added.)

The court thereupon (October 5, 1962) ordered plaintiff to file an affidavit "by a responsible officer setting forth those portions of its written agreement of August 22, 1960, with defendant describing the power supply units which are the subject matter of that agreement, and a copy of so much of the writing dated on or about November 1, 1960, which authorizes plaintiff to incorporate the 'C' specifications"; and ordered defendant to file an affidavit "of a responsible officer setting forth those portions of its letter contract with Varo, Inc., dated on or about November 21, 1960, describing the power supply units which are the subject matter of that contract, including the provision thereof referring to the specifications to be used by Varo, Inc., in its plans for said power units."

In response to the court's order the further affidavit of Gottlieb, plaintiff's assistant general manager, was filed. It incorporates as exhibits "a copy of that portion of the written agreement of August 22, 1960 [between plaintiff and defendant] which designates" the "B" specifications "as the applicable description of the power units ordered by defendant in the said written agreement," as well as a copy of the "B" specification and of the "C" specification (neither of which is included in the record before us). Also attached was a copy of a telegram from defendant to plaintiff dated November 1, 1960, which Gottlieb averred "authorized plaintiff to incorporate [the 'C' specification]." This telegram reads: "Imperative we receive your prompt acceptance of specification change NA5-15343-1C [the 'C' specification] delivered to you 30 Sept 1960. . . . Request you confirm immediately in writing that provisions of 'C' change have been incorporated *in your plans*." (Italics added.)

Likewise filed with Gottlieb's affidavit were copies of three interoffice letters of defendant which defendant had supplied to plaintiff by stipulation. Gottlieb avers that each of these letters refers to "the same Specification contained in Exhibit 'A' annexed hereto" (i.e., to the "B" specification). A reading of the first and second of such letters (Exhibits E, F) demonstrates that actually each of these two letters makes particular reference to the "C" specification, and both plaintiff's counsel and Gottlieb in a supplementary affidavit dated October 29, 1962, concede that the third such letter (Exhibit G) likewise refers to the "C" specification and that Gottlieb was in error in averring to the contrary.

The first of these interoffice letters of defendant, dated November 9, 1960, indicates defendant's doubt that plaintiff will be able to perform to "C" specification and its view that plaintiff's proposed charges therefor "appear to be exorbitant for the amount of work involved . . . it is very doubtful if the charges quoted could be justified," and its decision to investigate and verify by personal visit to Varo in Texas whether and when that company could perform and at what cost. The second letter, dated November 16, 1960, directs that the order to plaintiff be reduced to three units, with "The 'C' revision, presently under negotiation . . . *not* to be incorporated"; and that orders for the remaining six "supplies are to be placed with VARO." The third letter, dated November 21, 1960, states among other things that Varo "proposes to supply" six units to the "C" specification, and notes further that the "C" change, "considered by our Engineering Dept. to be minor in nature [with certain exceptions] resulted in a quotation from Chalco which, if incorporated into the existing Purchase Order, would increase it's cost by . . . approximately 105%. Furthermore, Chalco would still not guarantee to meet . . . requirements. . . . [T]here now also exists a doubt as to the technical capability of Chalco to fulfill this contract. . . . Failure to receive an acceptable power supply will seriously jeopardize our Prime Contract. . . ."

Defendant on its part in response to the court's above described order of October 5, 1962, filed the affidavit of Mr. Perkins, its buyer who dealt with plaintiff during the fall of 1960, setting forth provisions from the contract between defendant and Varo which state that Varo was to "Design and produce seven (7) . . . power supplies in accordance with Basic Equipment Specification NA5-51343B [which plaintiff and defendant agree is the '*C*' specification] per your Technical Proposal. . . ."

Attached as exhibits to Perkins' affidavit were copies of communications between plaintiff and defendant. The first such is a letter dated September 30, 1960, from Perkins, as buyer for defendant, to plaintiff enclosing copies of the "C" specification, requesting that plaintiff "complete a review and evaluation of the changes specified and present to the writer your . . . proposal for the accomplishment of the requirements no later than 4 November 1960," and stating that "It will probably be desired to incorporate the required changes

on all units under this purchase order, following agreement by Buyer and Seller to the effect on price and delivery of this change; . . ."

The next evidential communication is a telegram from plaintiff to defendant, dated November 2, 1960, which states: "Present planning for . . . delivery of Unit No. 1 has been revised to include incorporation of the 'C' change. . . . Work on this element, however, is being withheld pending your approval of our forthcoming proposal. We will submit our cost proposal this week and are withholding actual incorporation until notified to do so."

Thereafter, according to Perkins' affidavit, plaintiff submitted to defendant "about November 7 and November 11, 1960 cost proposals in respect of incorporating the 'C' change. In its letter dated 7 November 1960 [plaintiff] stated, among other things, . . . 'Early receipt of your authorization to accomplish these efforts and your change order incorporating the revised target price will be greatly appreciated.'" On November 30, 1960, Perkins sent to plaintiff a telegram stating that "You are working to 'B' change and are again reminded that your proposal for incorporation of 'C' change is unacceptable." Plaintiff does not deny receiving this telegram of November 30, although alleging in its complaint that defendant failed to reply to plaintiff's communications of November 7 and 11, 1960, which plaintiff terms a "claim in writing . . on account of the said changes" to "C" specifications, but which Perkins in his affidavit describes as "cost proposals," and further alleging that thereafter defendant "repeatedly requested and encouraged plaintiff to continue to perform research, design, development and manufacturing work in connection with the 'C' specifications."

Perkins' affidavit quotes, in addition, from the "B" and from the "C" specification and points out various technical differences between them.

Following the filing of Perkins' affidavit Gottlieb on behalf of plaintiff submitted the supplementary affidavit mentioned hereinabove, in which he conceded the error in his earlier affidavit with respect to differentiating between the "B" and the "C" specifications, but further averred—for the first time in this litigation—that the drawings of plaintiff which both plaintiff and defendant agree were requested by defendant on December 1, 1960, and which plaintiff asserts

defendant then turned over to Varo, "were made in accordance with . . . 'C' specification."

Neither plaintiff nor defendant denies that the copies of various documents submitted to the court as described above were true copies of existing and authentic originals.

Thereafter on December 7, 1962, the court issued its memorandum and order finding that "by its contract with defendant, plaintiff was called on to manufacture . . . to 'B' specifications"; that prior to the obtaining by defendant of plaintiff's drawings on December 1, 1960, "there had been some discussion about permitting plaintiff to incorporate" the "C" specification, but that as of November 2, 1960, plaintiff was "withholding actual incorporation until notified [by defendant] to do so"; that on November 30, 1960, plaintiff was reminded that it was working "to 'B' change," and "that your proposal for incorporation of 'C' change is unacceptable"; that there "is no evidence that the drawings which were furnished by plaintiff to defendant *the following day* [italics added] incorporated the 'C' specifications, or that plaintiff was ever authorized to incorporate those specifications"; that plaintiff has not furnished any evidence to show that (as alleged in the complaint) "on or about November 1, 1960, [defendant] confirmed . . . in writing" its alleged oral authorization to plaintiff to incorporate the "C" specifications into its plans; that the evidence is to the contrary.

The court further points out (1) that plaintiff's counsel in his memorandum filed October 30, 1962, states that there is "no doubt that the proposed contract with Varo . . . contemplated the 'C' specifications [which defendant itself asserts]," and (2) that in Gottlieb's affidavit filed the same day he says that the drawings which plaintiff delivered to defendant "were made in accordance with" the "C" specification. 'Assuming," stated the court, "that Mr. Gottlieb is qualified to express an opinion on this point, his conclusion is not supported by, and is in fact contrary to the documentary evidence now before the court."

The court concluded its written order by finding that defendant's contract with Varo did not call for the production of "the same units which were in course of production by plaintiff" under its contract with defendant, and that "defendant's contract with Varo . . . [and] the documents [sought by plaintiff] are not relevant to the subject matter of this action, and are not reasonably calculated to lead to

the discovery of admissible evidence in this action''; by noting that the court had already found that the documents in defendant's legal files (item 7 of plaintiff's motion) are privileged from discovery; and by denying plaintiff's motion.

Plaintiff now contends that the court below erred, as a matter of law, in denying *in toto* the inspection sought, and argues that the requested documents have been shown by it to be relevant to several ''factual issues'' including (1) whether defendant transferred plaintiff's drawings to Varo, (2) whether defendant requested plaintiff to ''make changes to 'C' specifications,'' (3) whether defendant's conduct was designed to hinder and impair plaintiff's performance, (4) whether defendant's inspection procedures were fair and proper, and (5) damages.[4]

And although recognizing that the court's interim order of October 5, 1962, instructed the parties to ''make a further showing to enable the Court to determine whether the units called for in the Varo contract were *the same as those called for in the contract between the parties*,'' (italics added) and asserting that whether defendant did or did not ''authorize plaintiff to *perform* to 'C' specifications'' (italics added) as ''plaintiff has alleged'' is ''the main issue in the pending action,'' plaintiff nevertheless complains (1) that the court confused the issue of whether plaintiff incorporated ''C'' in

---

[4] Plaintiff states that its ''factual theory with respect to the role of Varo, Inc., is as follows: On October 14, 1960, while plaintiff was in production [under 'B' specification], defendant requested a quotation from Varo, Inc. for the same units. Thereafter, while ostensibly dealing in good faith with plaintiff, defendant was in fact planning to scuttle its contract with plaintiff and substitute Varo, Inc. as the supplier. Defendant requested plaintiff to make changes to 'C' specifications and to submit its 'C' drawings to defendant. The change . . . involved extremely difficult technical problems. Plaintiff nevertheless completed new drawings to 'C' specifications, and submitted them to defendant. Defendant in turn delivered the 'C' drawings to Varo, Inc., and then advised plaintiff that it had never officially authorized the change to 'C' specifications, and to return to the 'B' specifications. This was a practical impossibility at that stage. Plaintiff therefore completed a prototype unit to 'C' specifications, despite the technical difficulties involved, and submitted it to defendant. After inspection defendant rejected the unit, claiming that it failed to meet specifications. Plaintiff contends that defendant's inspection procedures and standards were unfair and improper.

''Plaintiff has no present information as to Varo, Inc.'s subsequent experience with a contract for the same units, and seeks, *inter alia*, to obtain that information by the present motion, as well as information with respect to the delivery of drawings to Varo, Inc., the price paid to Varo, Inc., the technical difficulties encountered by Varo, Inc., changes in specifications in the Varo, Inc. contract, inspection procedures applied to Varo, Inc. units, etc.''

its "plans" as distinguished from incorporation in the manufactured product; (2) that plaintiff was not given an opportunity to show that it was authorized to perform to "C" and that defendant erroneously and "gratuitously" offered "three self-serving exhibits" on the point; (3) that the court's decision is "based on a resolution on the merits of the two principal issues in the action," *viz.*, "incorporation" of "C" and whether the drawings were to "C."

Plaintiff argues further that the court's finding that there was no evidence that the drawings were to "C" specification is contrary to the only evidence on the subject: the supplementary affidavit of Gottlieb; and points out that defendant did not in the trial court deny that the drawings were to "C." It should first be noted, however, that on the record presented to us it does not appear that plaintiff itself made any claim that the drawings were to "C" until *after* the trial court made its intermediate order of October 5, 1962, and until *after* both plaintiff and defendant had submitted their affidavits in response to such order. Then, and then only, Gottlieb, in his supplementary affidavit, asserted that the drawings were to "C." Thus, it would appear that defendant had no timely occasion to deny that assertion in the trial court, and that plaintiff is in no position to complain at this point. It may further be noted that in the same supplementary affidavit Gottlieb acknowledged his error in his earlier affidavit in differentiating between the "B" and the "C" specification, that he asserted no expert qualifications to distinguish whether the drawings were to "B" or to "C," and that for both reasons the court was entitled to view with doubt his statements concerning the drawings. Further, plaintiff—upon whom rests the burden of providing support for its motion—neither produced the drawings themselves nor requested defendant to do so, and offers no explanation for such failure; neither did plaintiff produce evidence by any expert shown to be technically qualified to express an opinion as to whether the drawings were to "B" or to "C" specifications.

With respect to the drawings, defendant has now filed with this (Supreme) court (with its demurrer and answer to the petition for the writ) the affidavit of its "Senior Engineer, Research, primarily in the field of electronics, and as such the responsible engineer . . . for the power supplies specified in the 'B' and 'C' specifications," who avers that plaintiff's drawings furnished to defendant "reveal that they were not

prepared for and they do not comply with the 'C' specification,'' states the respects in which they do not comply, and asserts that neither the drawings nor any copies thereof have at any time been discussed with, examined by or delivered to Varo. Defendant's verified answer to plaintiff's complaint also denies flatly that the drawings were delivered to or used by Varo. The affidavits of two other employes of defendant (its buyer Perkins who dealt with plaintiff, as well as Perkins' supervisor) have also been filed with this court, asserting that plaintiff's drawings were not disclosed to Varo. █ Even if plaintiff were in a position to raise the point, failure to present these affidavits to the trial court does not preclude their consideration on this petition for mandamus. (See *Greyhound Corp.* v. *Superior Court* (1961), *supra*, 56 Cal.2d 355, 387 fn. 13, 389 [42], 390 [46].)

█ In summary, although plaintiff's attempted elaboration of its own position seems somewhat confused and contradictory, the following would appear to constitute a fair statement of the situation as presented by the record: Defendant in November 1960 authorized plaintiff to incorporate ''C'' in plaintiff's plans, but did not then authorize plaintiff to manufacture to ''C'' and plaintiff has presented no evidence of a later contract or authorization to so manufacture; in the same month of November defendant contracted with Varo to manufacture to ''C'' and on December 1, 1960, requested and received plaintiff's drawings; plaintiff, although not alleging in its complaint that the drawings were to ''C,'' now asserts that they were, although the trial court did not so find and defendant denies it and also denies plaintiff's information and belief or conclusional allegation that they were disclosed to Varo.

The trial court's conclusion that the documents sought by plaintiff—all of which concern the dealings between defendant and Varo—are not relevant to the subject matter of this action, i.e., the contract between plaintiff and defendant, appears to be based in turn upon its determination that the contract with Varo contemplated production to ''C'' specification whereas that of plaintiff authorized production to ''B,'' and that plaintiff has not shown that its drawings were to ''C.''

Plaintiff's first, second and fourth causes of action are based upon the claim that it is entitled to payment for its costs and profits in production of the single unit which it tendered to defendant and of the six units which defendant ter-

minated, and its third cause of action seeks to recover the alleged value of its drawings plus exemplary damages. It has not established that it was authorized by defendant to produce the same units, i.e., to "C" specifications, as those called for in defendant's contract with Varo, or that its drawings were to "C." We are not persuaded that under such circumstances the documents which it seeks to inspect and copy—all of which have to do with the dealings between defendant and Varo—can be held as a matter of law to be relevant to the subject matter of plaintiff's action; i.e., to the contracts and dealings between plaintiff and defendant. As already noted hereinabove, the discretion to be exercised in discovery matters is that of the trial court, rather than of this court—and the trial court has concluded that in the present posture of the case the documents are not relevant.

█ Finally, plaintiff's complaint that the court has decided its whole case in this discovery proceeding is without merit. (See *Mall Tool Co.* v. *Sterling Varnish Co.* (1951) 11 F.R.D. 576, 578 [2]; *Love* v. *Metropolitan Life Ins. Co.* (1948) 8 F.R.D. 583, 584 [1].) As pointed out by defendant, plaintiff's case is not basically grounded upon defendant's dealings with Varo, but rather upon the dealings and contracts between defendant and plaintiff. A determination that the Varo documents are not relevant to this litigation would not preclude plaintiff from proving any bona fide claims under its own contracts with defendant, including the value, if any, of the drawings contractually furnished. Adequate procedural remedies in this respect remain open to plaintiff.

The alternative writ heretofore issued is discharged and the peremptory writ is denied.

Gibson, C.J., Trayor, J., McComb, J., Peters, J., Tobriner, J., and Peek, J., concurred.

Petitioner's application for a rehearing was denied July 24, 1963.