[Civ. No. 31253. Second Dist., Div. Two. Feb. 6, 1967.]

SIERRA VISTA HOSPITAL, Petitioner, v. THE SUPERIOR COURT OF SAN LUIS OBISPO COUNTY, Respondent; EVELYN SHAFFER et al., Real Parties in Interest.

Archbald, Zelezny & Spray, Joseph L. Spray and Malcolm Archbald for Petitioner.

No appearance for Respondent.

Trapp & Kirk and Daniel J. Kirk for Real Parties in Interest.

McCOY, J. pro tem.*—In the early part of 1963 Evelyn Shaffer was a patient in the Sierra Vista Hospital in San Luis Obispo apparently under the care of a Dr. Prier. Sometime after her release from the hospital she and her husband filed an action in the respondent court against Dr. Prier and the hospital, among others, seeking to recover damages resulting from their alleged negligence.

After the action was at issue, plaintiffs' attorneys served an interrogatory asking the hospital whether any investigations or other reports were ''prepared, compiled, submitted or

---

*Assigned by the Chairman of the Judicial Council.

made by you or on your behalf or by or on behalf of any insurance company in the regular course of business or in preparation for litigation, as a result of the injuries and damages claimed by plaintiff in this action.'' This interrogatory was answered in June 1964, on behalf of the hospital by W. Travis Wilson, its administrator, as follows: ''Yes; a confidential report of incident was made on March 5, 1963, by Irene Brown, Director of Nursing Services, and W. Travis Wilson, Hospital Administrator. This report was sent to Truck Insurance Exchange as confidential information for the purpose of preparing to defend Sierra Vista Hospital in the event a law suit should be filed by Evelyn Shaffer. Custody of this report is with Truck Insurance Exchange. A photostatic copy is in possession of Malcolm Archbald, attorney for Sierra Vista Hospital.'' Plaintiffs took the deposition of Travis Wilson in May 1965. In the absence of any showing to the contrary, we assume that Travis Wilson was not named as a party to the action.

In August 1966 plaintiffs noticed a motion for an order requiring the hospital to produce the incident report of March 1963 for inspection by their attorneys. The motion was made on the ground that the report ''is not privileged . . . and constitutes evidence which is relevant to the subject matter'' of the action and material to the issues to be filed. The court granted plaintiffs' motion on November 9 and a week later signed the order here under review requiring the hospital to produce the report for inspection.

Petitioner contends that the order for the production of the incident report constitutes an abuse of the court's discretion. ▆ We agree. ''In a legal sense discretion is abused whenever in the exercise of its discretion the court exceeds the bounds of reason, all of the circumstances before it being considered.'' (*Berry* v. *Chaplin,* 74 Cal.App.2d 669, 672 [169 P.2d 453], quoted with approval in *State Farm etc. Ins. Co.* v. *Superior Court,* 47 Cal.2d 428, 432 [304 P.2d 13].) In view of our conclusion that the report is privileged, the order is also in excess of the court's jurisdiction. Section 2031, Code of Civil Procedure, expressly limits inspection to matters that are ''not privileged.'' Section 2016, subdivision (b), provides that ''All matters which are privileged against disclosure upon the trial under the law of this State are privileged against disclosure through any discovery procedure.''

The primary question before us is whether the incident report is privileged within the meaning of section 2031, Code

of Civil Procedure, providing for the production and inspection of documents which are "not privileged." ▮ The term "not privileged" as used in this and other sections relating to discovery "refers to 'privileges' as that term is understood in the law of evidence." (*United States* v. *Reynolds*, 345 U.S. 1, 6 [97 L.Ed. 727, 73 S.Ct. 528, 32 A.L.R.2d 382].) In our opinion the report is protected from discovery by reason of the attorney-client privilege as established by former section 1881, Code of Civil Procedure, which was applicable at the time the trial cout made its order. (See Evid. Code, § 12.) It would be equally protected from discovery by reason of the attorney-client privilege established by section 952 of the Evidence Code. This privilege is founded upon the "belief that the benefits derived therefrom justify the risk that unjust decisions may sometimes result from the suppression of relevant evidence." (*City & County of San Francisco* v. *Superior Court*, 37 Cal.2d 227, 235 [231 P.2d 26, 25 A.L.R.2d 1418].)

▮ The petitioner, Sierra Vista Hospital, is a corporation. As such, it is entitled to claim the same protection of the attorney-client privilege in a proper case as that enjoyed by a natural person. (*D. I. Chadbourne, Inc.* v. *Superior Court*, 60 Cal.2d 723, 736 [36 Cal.Rptr. 468, 388 P.2d 700]; *People* ex rel. *Dept. of Public Works* v. *Glen Arms Estate, Inc.*, 230 Cal.App.2d 841, 856 [41 Cal.Rptr. 303].) These cases hold that a corporation shall "not be given greater privileges than are enjoyed by a natural person merely because it must utilize a person in order to speak." In all such cases, however, the power of a reviewing court is limited. As the court said in *Chadbourne* (p. 729), if the facts support the contention that the communication involved "was privileged as a matter of law, respondent court was required to deny the motion for inspection (§ 2016, subd. (b)). If, however, the claimed privilege does not appear as a matter of law, but presented a question of fact, then the determination of the trial court may not be set aside. ▮ When the facts, or reasonable inferences from the facts, shown in support of or in opposition to the claim of privilege are in conflict, the determination of whether the evidence supports one conclusion or the other is for the trial court, and a reviewing court may not disturb such finding if there is any substantial evidence to support it (*Holm* v. *Superior Court*, 42 Cal.2d 500, 507 [267 P.2d 1025, 268 P.2d 722]; *San Diego Professional Assn.* v. *Superior Court*, 58 Cal.2d 194, 202 [23 Cal.Rptr. 384, 373 P.2d 448, 397

A.L.R.2d 761]). ▇▇▇ The party claiming privilege carries the burden of showing that the evidence which it seeks to suppress is within the terms of the statute. (*Tanzola* v. *De Rita*, 45 Cal.2d 1, and cases cited at p. 6 [285 P.2d 897]; see also, *Brotsky* v. *State Bar*, 57 Cal.2d 287, 303 [19 Cal. Rptr. 153, 368 P.2d 697, 94 A.L.R.2d 1310].) It follows that the writ should not issue unless privilege appears, as a matter of law, from the undisputed facts set forth in the declarations.''

The determinative facts of this case are undisputed. The only evidence submitted in support of the motion was a transcript of the deposition of Travis Wilson, the hospital administrator. The declaration of plaintiffs' attorney filed in support of the motion does not allege any facts within his knowledge bearing on the question of privilege. The court also had before it the declaration of Travis Wilson and the declaration of Malcolm Archbald, one of the petitioners' attorneys, in opposition to the motion. Copies of these several documents are a part of the record here.

It appears from the Wilson declaration that his duties as administrator of the hospital are those of general business manager, that all of the personnel of the hospital are under his direction, and that it is ''one of my specific duties to protect the Hospital from any cause that might subject the Hospital to any kind of legal action or liability.'' From the time of his employment in September 1959, when the hospital commenced operations, it has carried liability insurance with Truck Insurance Exchange, which has always supplied him with printed forms on which to make a confidential report of all ''incidents.'' He was instructed by the insurance company to use this form to report all incidents which might result in litigation against the hospital and send the reports to the insurance company to be transmitted to and used by the attorney representing the hospital in the event of litigation.

With respect to the incident involving the plaintiff Evelyn Shaffer, Wilson alleged in his declaration that on March 1, 1963, when she was a patient in the hospital, he received information of an incident which led him to believe that she ''would possibly file a suit for damages against the hospital arising out of that incident.'' In order to obtain information to defend such a lawsuit, he directed Irene Brown, the director of nursing services at the hospital, to gather information for use in preparing a report of the incident for the insurance company. The incident report was prepared in part by

Irene Brown and in part by Wilson on March 5, 1963, and signed by both of them. On March 6, 1963, he mailed the original and a copy of the report to Fred Lee, the adjuster for the insurance company in Santa Maria, to whom he had been instructed to forward such reports. At his deposition a year or so before he executed his declaration Wilson testified that, to the best of his recollection, he typed the report himself, that he did not retain any copies of the report at the hospital, and did not send a copy to anyone else.

It further appears from Wilson's declaration that neither he nor Irene Brown were witnesses to the incident which was the subject of the report. At his deposition he testified that he did not talk with any other hospital personnel concerning the incident, but that he discussed the incident with Dr. Prier before preparing the report and that Dr. Prier told him that "it would be a reportable incident."* The information contained in the report was not based on anything told to him by Dr. Prier or by anyone else other than Irene Brown.

Mr. Archbald alleges in his declaration that on August 26, 1963, just four days after the summons and complaint were served on the hospital, he received a letter from Truck Insurance Exchange asking him to defend the action as attorney for the hospital, and that he is now acting in that capacity. At the same time he received a copy of the incident report for use, and which has been used by him in defending the hospital.

The basic principles which govern the right of a corporation to claim the protection of the attorney-client privilege were stated by the Supreme Court in *D. I. Chadbourne, Inc.* v. *Superior Court,* 60 Cal.2d 723, beginning at page 736 [36 Cal.Rptr. 468, 388 P.2d 700]. ▆ The court there said that when an employee of a corporation "is not a codefendant (or person who may be charged with liability), his communication should not be so privileged unless, under all of the circumstances of the case, he is the natural person to be speaking for the corporation; that is to say, that the privilege will not

*Wilson testified that he did not recall "going into any details" with Dr. Prier although he did recall stating to him generally what the subject was. "In general, it would have been that we had a reported incident of a person having become faint and that our aids had helped her, attempted to help her, and tried to ascertain if there was any injury done." He also testified that in the course of time after the report was sent to the insurance company he possibly discussed the incident while having coffee with other doctors on the staff because he felt that "talking to the doctors would be helpful" to him "in order to properly administer the procedures in the hospital," but that he did not recall his conversation with any of them.

attach in such case unless the communication constitutes information which emanates from the corporation (as distinguished from the nonlitigant employee), and the communicating employee is such a person who would ordinarily be utilized for communication to the corporation's attorney; . . . █ 4. Where the employee's connection with the matter grows out of his employment to the extent that his report or statement is required in the ordinary course of the corporation's business, the employee is no longer an independent witness, and his statement or report is that of the employer; █ 5. If, in the case of the employee last mentioned, the employer requires (by standing rule or otherwise) that the employee make a report, the privilege of that report is to be determined by the employer's purpose in requiring the same; that is to say, if the employer directs the making of the report for confidential transmittal to its attorney, the communication may be privileged; . . .''

There can be no doubt that the incident report involved here fairly meets all these requirements and is privileged. █ This being so it "does not lose its privilege," to quote further from *Chadbourne,* "merely because it was obtained, with the knowledge and consent of the employer, by an agent of the employer acting under such agency; 8. For such purpose an insurance company with which the employer carries indemnity insurance, and its duly appointed agents, are agents of the employer corporation; but the extent to which this doctrine may be carried, and the number of hands through which the communication may travel without losing confidentiality must always depend on reason and the particular facts of the case." Here the report did not lose confidentiality by traveling from the hospital administrator to the hospital's attorney directly through the agency of its insurance carrier.

The record also shows that the report was intended to be confidential. █ "[I]n all corporate employer-employee situations," according to *Chadbourne,* "it must be borne in mind that it is the intent of the person from whom the information emanates that originally governs its confidentiality (and hence its privilege); thus where the employee who has not been expressly directed by his employer to make a statement, does not know that his statement is sought on a confidential basis (or knowing that fact does not intend it to be confidential), the intent of the party receiving and transmitting that statement cannot control the question of privilege;

██ 10. Similarly, where the corporate employer directs the employee, at the request of its insurance carrier, to make such a statement, the intent of the employer controls; and unless the insurance carrier (or its agent) has advised the employer that the employee's statement is to be obtained and used in such manner, it cannot be said that the corporation intended the statement to be made as a confidential communication from client to attorney; . . .'' ██ Even if it could be said that the corporate employee, Wilson, was not expressly directed by the hospital to make the report as to the particular incident, it must be held under the first of these rules that he knew that the report was sought by the insurance company on a confidential basis, and that he intended the report to be confidential. This is evident not only from his testimony and his declaration, but also from the fact that the words ''CONFIDENTIAL REPORT OF INCIDENT (NOT A PART OF MEDICAL RECORD),'' are printed in capital letters at the top of the form on which the report was made. With respect to the second of these rules, it is a fair inference that the hospital directed Wilson as its administrator to make all such reports for the hospital as requested by its insurance carrier. ██ Since the insurance carrier advised the hospital by the statement on its printed forms that the incident reports were to be obtained and used in a confidential manner, it must be held that the hospital corporation intended the reports to be made as confidential communications from it to its attorney through the agency of its insurance company.

It appears from the memorandum filed by the trial court that its decision to grant plaintiffs' motion was based on its conclusion ''that the preparation [of the incident report] for the purpose of preparing to defend against possible litigation was not the dominant purpose.'' The court said that in reaching this conclusion it relied on the declaration of plaintiffs and a reading of Wilson's deposition taken long after the filing of the action.

██ The rule in such cases is stated in *Chadbourne*, at page 737: ''6. When the corporate employer has more than one purpose in directing such an employee to make such report or statement, the dominant purpose will control, unless the secondary use is such that confidentiality has been waived; . . .'' We find nothing in the evidence before the trial court which even remotely suggests that the hospital had more than the one purpose in preparing the incident report discussed above. On the contrary, as we have already pointed

out, Wilson testified directly and without contradiction that it was prepared for and sent to the insurance company at its request, that no copies were kept by the hospital or sent to anyone else, and that it was not seen by or given to any members of the medical staff and was not given to any group or committee of the hospital.

 It appears to us from the undisputed facts relied on by petitioner in support of its claim of privilege that the incident report is privileged as a matter of law. The respondent court was therefore required to deny plaintiffs' motion for inspection.

Let a peremptory writ issue prohibiting the respondent court from enforcing its order of November 15, 1966, in action number 28814, requiring petitioner to produce for plaintiffs' inspection, the incident report dated March 5, 1963, signed by Irene Brown and W. Travis Wilson.

Roth, P. J., and Herndon, J., concurred.