[No. D041785. Fourth Dist., Div. One. June 6, 2003.]

SCRIPPS HEALTH, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
JAMES HALLER REYNOLDS et al., Real Parties in Interest.

530

**COUNSEL**

Lotz, Doggett & Rawers, Thomas E. Lotz and J. Jason Hill for Petitioner.

No appearance for Respondent.

Clement & Associates, Lesley Ann Clement and Martha M. Stringer for Real Parties in Interest.

**OPINION**

**McINTYRE, J.**—In this case we conclude that confidential occurrence reports prepared by a hospital were protected by the attorney-client privilege and thus the trial court abused its discretion by ordering such reports be produced during discovery.

## FACTUAL AND PROCEDURAL BACKGROUND

The heirs of decedent Gerald Reynolds (collectively plaintiffs) sued Scripps Health doing business as Scripps Memorial Hospital Encinitas (Scripps) for damages for wrongful death arising out of Reynolds's hospitalizations at Scripps's facility. During the course of discovery, plaintiffs served written document requests on Scripps seeking "[a]ll records regarding any incidents and/or changes in [the] condition of [Reynolds]" during his stay at the Scripps facility that were not contained in his medical records. Scripps responded to the request by indicating it had five "occurrence reports" that it would withhold based on the attorney-client and work product privileges and the privilege for hospital peer review materials contained in Evidence Code section 1157 (all statutory references are to this code). Scripps supplied a blank occurrence report form and provided a privilege log indicating that hospital employees prepared the reports in anticipation of litigation. The occurrence report form states in bold letters at the top "CONFIDENTIAL: Not part of medical record / Do not photocopy." The form seeks information about the occurrence and asks for an evaluation of the significance level of the occurrence in terms of the potential for claims or litigation.

Plaintiffs filed a motion for production of the occurrence reports, which the trial court tentatively granted after concluding that the reports were not privileged under section 1157 or as attorney work product. The trial court found that the reports were (1) in the nature of an administrative record and did not contain information resulting from investigations of a medical review committee, (2) prepared at or near the time of the incident and were not necessarily forwarded to a hospital review committee, and (3) not provided by an insurer, not necessarily forwarded to counsel or an insurer, and were not necessarily prepared for the purpose of preparing to defend the hospital in the event of a lawsuit. The trial court initially made no specific findings regarding application of the attorney-client privilege.

After listening to oral argument, the trial court continued the hearing and allowed Scripps to file additional evidence. The trial court considered Scripps's submissions and ruled that the reports did not fall under either the attorney-client or the attorney work product privileges. The court found that the primary purpose of the reports was to "chronicle an incident that occurred so that the hospital [could] take whatever steps necessary to make sure that it doesn't happen again." In making this finding, the trial court noted that the report forms primarily requested "observational information" and not much "opinion" information. Scripps sought writ review of the trial court's order, requesting that the order be vacated and a new and different

order be entered denying the motion. We issued an order to show cause why the relief sought should not be granted.

## DISCUSSION

### Legal Principles

The attorney-client privilege is codified in sections 950 through 962. The term "confidential communication between client and lawyer" includes "information transmitted between a client and his . . . lawyer in the course of that relationship and in confidence . . . ." (§ 952.) ▊ If a "confidential communication between client and lawyer" exists, the client has a privilege protecting disclosure (§ 954), and the attorney has an obligation to refuse disclosure unless otherwise instructed by the client. (§ 955.) While attorney-client communications are presumed to be confidential (§ 917), the party claiming the attorney-client privilege as a bar to disclosure has the burden of showing that the communication sought to be suppressed falls within the parameters of the privilege. (*Alpha Beta Co. v. Superior Court* (1984) 157 Cal.App.3d 818, 825 [203 Cal.Rptr. 752].)

The landmark case of *D.I. Chadbourne, Inc. v. Superior Court* (1964) 60 Cal.2d 723 [36 Cal.Rptr. 468, 388 P.2d 700] (*Chadbourne*) details 11 basic principles to be applied in determining whether the attorney-client privilege exists in a corporate setting. (*Id.* at pp. 736-738.) ▊ Where, as here, a corporate employer requires that its employees make a report, the privilege of that report is determined by the employer's purpose in requiring the report. (*Id.* at p. 737.) When the corporate employer has more than one purpose in requiring the report, the dominant purpose will control. (*Ibid.*)

▊ We review discovery orders under the abuse of discretion standard, and where the petitioner seeks relief from a discovery order that may undermine a privilege, we review the trial court's order by way of extraordinary writ. (*Kleitman v. Superior Court* (1999) 74 Cal.App.4th 324, 330 [87 Cal.Rptr.2d 813].) "Where there is a basis for the trial court's ruling and it is supported by the evidence, a reviewing court will not substitute its opinion for that of the trial court. [Citation.] The trial court's determination will be set aside only when it has been demonstrated that there was 'no legal justification' for the order granting or denying the discovery in question. [Citations.]" (*Lipton v. Superior Court* (1996) 48 Cal.App.4th 1599, 1612 [56 Cal.Rptr.2d 341].) We defer to the court's factual findings concerning privilege if they are supported by substantial evidence. (*Sierra Vista Hospital v. Superior Court* (1967) 248 Cal.App.2d 359, 364 [56 Cal.Rptr. 387] (*Sierra Vista*).)

*Analysis*

 The trial court rejected Scripps's assertion of the attorney-client privilege, essentially finding that the dominant purpose of the occurrence reports was accident prevention. We conclude that the trial court abused its discretion because the undisputed facts show the dominant purpose of the reports was for transmittal to an attorney in the course of the professional attorney-client relationship under circumstances where Scripps expected confidentiality. (§ 952; *Holm v. Superior Court* (1954) 42 Cal.2d 500, 507 [267 P.2d 1025] (*Holm*), disapproved on another point in *Suezaki v. Superior Court* (1962) 58 Cal.2d 166, 176 [23 Cal.Rptr. 368, 373 P.2d 432, 95 A.L.R.2d 1073].)

Scripps relies on *Sierra Vista, supra,* 248 Cal.App.2d 359, to support its argument that the occurrence reports are privileged. The appellate court in *Sierra Vista* followed the "dominant purpose" test articulated in *Chadbourne* in circumstances analogous to the instant case. (*Sierra Vista, supra,* 248 Cal.App.2d at·p. 368.) At issue in *Sierra Vista* was an "incident report" prepared by a hospital's director of nursing services and its hospital administrator after an alleged injury. (*Id.* at p. 363.) The report was typed on a form with the words "CONFIDENTIAL REPORT OF INCIDENT (NOT A PART OF MEDICAL RECORD)" appearing at the top. (*Id.* at p. 368.) The insurance company for the hospital instructed the administrator to use the form to report all incidents that might result in litigation against the hospital and send the reports to the insurance company for use by the attorney representing the hospital in the event of litigation. (*Id.* at p. 365.) The administrator sent the completed form to the hospital's insurance company adjuster and did not retain a copy of the report or send a copy to anyone else. (*Id.* at p. 366.) The court held that the report was protected under the attorney-client privilege because the hospital intended the report to be a confidential communication to its attorney through its insurance company. (*Id.* at p. 368.)

The trial court distinguished the instant case from *Sierra Vista,* stating the "occurrence reports [were] not provided by the insurer, not necessarily forwarded to counsel or an insurer, and [were] not necessarily prepared for the purpose of preparing to defend the hospital in the event of a lawsuit." We find these purported distinctions illusory because Scripps was self-insured, maintained in-house counsel, required completion of the confidential occurrence reports for the purpose of attorney review and intended the reports to be confidential.

Here, undisputed evidence revealed that Scripps's corporate in-house counsel declared that the occurrence reports are confidential records prepared by Scripps employees under its risk management plan (the Plan) and

pursuant to the directive of its legal department. The Plan was devised so that Scripps could participate in a self-insurance program for professional liability claims. ■ "Self-insurance" is " 'insurance of oneself or of one's own interests by the setting aside of money at regular intervals to provide a fund to cover possible losses . . . .' " (*Alderson v. Insurance Co. of North America* (1990) 223 Cal.App.3d 397, 407 [273 Cal.Rptr. 7], quoting from Webster's New Internat. Dict. (3d ed. 1966) p. 2060.) "It is implicit in the term, 'self-insurer,' that such person maintains a fund, or a reserve, to cover possible losses, from which it pays out valid claims, and that the self-insurer have a procedure for considering such claims and for managing that reserve." (*Alderson v. Insurance Co. of North America, supra,* 223 Cal.App.3d at p. 407.)

■ The Scripps self-insurance program requires that each Scripps facility have an on-site risk manager who serves as the liaison to the Scripps legal department. Under the Plan, the risk manager at each Scripps facility is also deemed to be an "agent" of Scripps's legal department. Scripps considers the reports to be the underpinning of its self-insurance program, risk management program and quality assurance program and its legal department has always maintained the reports as an "attorney/client communication directly between employees and in-house counsel pursuant to SCRIPPS Risk Management Plan." The reports are used by Scripps attorneys and are designed to be an internal risk and claim assessment profile for Scripps's in-house counsel. As explained by counsel at oral argument, claims and reserves for Scripps's self-insurance status are based upon information in the reports.

■ It has long been recognized that communications made by an insured to his " 'liability insurance company, concerning an event which may be made the basis of a claim against him covered by the policy, is a privileged communication, as being between attorney and client, if the policy requires the company to defend him through its attorney, and the communication is intended for the information or assistance of the attorney in so defending him.' . . ." (*Travelers Ins. Companies v. Superior Court* (1983) 143 Cal.App.3d 436, 448-449 [191 Cal.Rptr. 871], citations omitted.) ■ Here, the reports were "primarily created for the purpose of attorney review whether or not litigation is actually threatened at the time a report is made." Based on Scripps's self-insured status, the reports were also used by the risk managers as de facto insurance claims handlers. These facts, which plaintiffs did not dispute, compel a finding that the occurrence reports are attorney-client privileged communications. The trial court's remark that the reports are not privileged because they primarily involve "observational information" as opposed to "opinion information" was unsound as this

distinction is not contained in statutes articulating the attorney-client privilege nor cases interpreting the scope of the privilege. (See *Mitchell v. Superior Court* (1984) 37 Cal.3d 591, 601 [208 Cal.Rptr. 886, 691 P.2d 642] [no differentiation between factual and legal information].) It may be that the factual aspect of the reports will be revealed during some other aspect of discovery, but this does not make the occurrence reports discoverable.

Despite the uncontroverted evidence presented by Scripps, the trial court concluded that the primary purpose of the reports was "accident prevention"; however, the evidence does not support this conclusion. Although Scripps admits that the reports serve a dual purpose—attorney review in anticipation of possible litigation and quality assurance/peer review—the actual physical reports are not reviewed or submitted to any peer review or quality assurance committee, but are kept confidential, with access provided only to the risk managers, in-house or outside counsel and third party litigation claim administrators. As claimed by Scripps, this confidentiality is necessary to preserve the attorney-client privilege. To maintain the privilege, the Scripps Risk Management Office processes the reports by extracting information and compiling the information into a survey, which is then submitted to Scripps's quality assurance committee.

"Where, as here, the right to the privilege is clearly established it should not be cast aside. The fact that the information contained in the communications might also be used for incidental purposes not entitled to the privilege is unimportant." (*Holm, supra*, 42 Cal.2d at p. 509.) Accordingly, we conclude that the trial court abused its discretion in ordering the occurrence reports be produced because they fall within the attorney-client privilege. Based on this conclusion, we have no need to discuss application of the attorney work product privilege or the privilege for hospital peer review materials contained in section 1157.

### DISPOSITION

Let a writ issue directing the superior court to vacate its February 21, 2003 order granting the discovery motion, and to enter a new and different order denying the motion. Our temporary stay of the trial is vacated. Petitioner is entitled to costs in this writ proceeding.

Nares, Acting P. J., and McConnell, J., concurred.