[No. B179588. Second Dist., Div. Eight. Sept. 29, 2005.]

DOE 2, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
MARK CALKINS et al., Real Parties in Interest.

1506

Counsel

Callahan, McCune & Willis and Scott S. Blackstone for Petitioner.

No appearance for Respondent.

Law Offices of Freberg & Associates and Katherine K. Freberg for Real Parties in Interest.

Opinion

COOPER, P. J.—This writ proceeding concerns a discovery dispute in an action brought against four local United Methodist churches by three persons who allege they were sexually abused as minors in the 1970's by a probationary clergy member of one of the churches. The trial court granted motions by the plaintiffs to compel one of the churches to provide further responses to interrogatories and to produce documents in response to a production request. In doing so, the court rejected the church's claims based on the clergy-penitent privilege (Evid. Code, § 1034),[1] the privacy rights of third parties, and the attorney-client privilege.

We conclude that the trial court abused its discretion in certain respects and that it failed to properly analyze the church's clergy-penitent privilege assertion. Accordingly, we grant the petition in part and direct the trial court to reconsider the motions in accordance with the views expressed herein.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Lawsuit.*

Real parties in interest Mark Calkins, Robert Pugh and Todd Stocking filed this action in October 2003 against four United Methodist churches: Doe 1, a Methodist church in West Sacramento; Doe 2, a Methodist church in Walnut Creek and the petitioner in this writ proceeding; Doe 3, a Methodist Church

---

[1] Evidence Code section 1034 provides: "Subject to Section 912 [dealing with waivers], a member of the clergy, whether or not a party, has a privilege to refuse to disclose a penitential communication if he or she claims the privilege."

" '[P]enitential communication' means a communication made in confidence, in the presence of no third person so far as the penitent is aware, to a member of the clergy who, in the course of the discipline or practice of the clergy member's church, denomination, or organization, is authorized or accustomed to hear those communications and, under the discipline or tenets of his or her church, denomination, or organization, has a duty to keep those communications secret." (Evid. Code, § 1032.)

All undesignated statutory references are to the Evidence Code.

in Pasadena; and Doe 4, a Methodist church in Long Beach.[2] In the complaint, plaintiffs allege that, while attending the Methodist Youth Fellowship at the Long Beach church, they were sexually abused by Gary Allen Carson-Hull who, at the time, was a probationary clergy member of that church, and was working toward full clergy membership.[3] The alleged sexual abuse began in the mid-1970's when the plaintiffs were approximately 12 to 13 years old, and lasted until approximately 1979.

The complaint alleges that in the early 1970's (i.e., before plaintiffs were abused), Carson-Hull served as "the youth director and/or youth minister" at the Walnut Creek church, where he molested minor members of that church and/or students from entities associated with the church. Plaintiffs claim the Walnut Creek church knew or had reason to know of this abuse, yet it failed to take steps to ensure that Carson-Hull was not placed in an environment where he would come in contact with children.

The complaint alleges that after the abuse occurred, the Walnut Creek church conspired with the Long Beach church to move Carson-Hull to Southern California. According to the complaint, the Walnut Creek church informed the Long Beach church about Carson-Hull's molestations in Northern California and requested that he be assigned to the Long Beach church. The Long Beach church agreed to the request. At the same time, the complaint alleges that the Walnut Creek church made "misleading half truth[]" statements to the Long Beach church that "Carson-Hull was a minister and/or clergy member fit for employment."

---

[2] The entities were named as "Does" because Code of Civil Procedure section 340.1, subdivision (m), provides that "[i]n any action subject to subdivision (g) [childhood sexual abuse case brought by a plaintiff 26 years of age or older], no defendant may be named except by 'Doe' designation in any pleadings or papers filed in the action until there has been a showing of corroborative fact as to the charging allegations against that defendant." Notwithstanding the Doe designations in portions of the complaint, the parties have freely referred to the geographical locations of the four defendant churches in their filings in the trial court and in this court.

Although it appears all four churches are part of the California-Nevada Annual Conference of the United Methodist Church (see *Evan F. v. Hughson United Methodist Church* (1992) 8 Cal.App.4th 828, 831 [10 Cal.Rptr.2d 748], the precise relationship among them is not clear. The complaint suggests that Does 1 and 2, on the one hand, and Does 3 and 4, on the other hand, may be related to each other in some fashion. Thus, many of the factual allegations in the complaint refer to Does 1 "and/or" 2, or Does 3 "and/or" 4. For simplicity, when the complaint refers to Does 1 "and/or" 2, we will refer only to petitioner Doe 2 (the Walnut Creek church). Similarly, when the complaint refers to Does 3 "and/or" 4, we will refer only to Doe 4 (the Long Beach church). (We refer to Doe 4 because the plaintiffs allege they were molested in Long Beach.)

[3] The name "Carson-Hull" is inconsistently hyphenated throughout the record. For consistency, we use the hyphenated version, except when quoting from the record, in which case we follow the format used in the quoted text.

Carson-Hull was arrested in May 2002 in connection with alleged abuse of victims in Long Beach. The pastor of the Walnut Creek church—Renae Extrum Fernandez—stated in a declaration submitted in connection with the discovery disputes at issue in this writ proceeding that she first learned of the allegations against Carson-Hull after his arrest in 2002. Pastor Fernandez organized a local response committee "to reach out to persons affected by Carson Hull and also to address issues relating to potential litigation involving victims of the reported abuse." Pastor Fernandez also stated in her declaration: "I . . . made myself available to persons, including members of the United Methodist Church, who desired to seek spiritual and religious counseling and healing concerning Carson-Hull. My intent was that any communications to me regarding Carson Hull as part of this spiritual and religious outreach would be treated as confidential communications that would be protected from disclosure in my capacity as a pastor of the church." In addition, Pastor Fernandez stated that she "held a weekend retreat to provide religious and spiritual healing to persons affected by Gary Carson-Hull." She provided no additional information regarding this retreat.

Attached to Pastor Fernandez's declaration was a letter dated May 28, 2002, which was apparently distributed to persons attending the church (hereafter referred to as the outreach letter), in which Pastor Fernandez discussed the Carson-Hull case and Carson-Hull's connection to the Walnut Creek church. In relevant part, the letter stated: "I want everyone to know that my heart and my office are open to hear the concerns of anyone who was part of our fellowship at that time [i.e., while Carson-Hull was with the Walnut Creek church]. [¶] In the interest of that goal, I hope to correspond with everyone who can be identified as youth and adult participants in our youth ministry from 1973–1975. If you can assist me in locating friends and family who have moved away from our fellowship in the intervening years, I would be most grateful. Additionally, I am assembling a response team that will lead those who choose to participate in a process for healing. [¶] . . . [¶] The time for whispers is past. It is time for clear and compassionate conversation with one another and with our God. Please join me in prayer for everyone affected by this news. As always, I will keep your response in pastoral confidence. Also, as always, I encourage anyone with any knowledge of wrongdoing in any circumstance to contact the appropriate law enforcement and legal authorities. You have my complete support in so doing."

According to a July 2002 article in the Contra Costa Times (i.e., about two months after Pastor Fernandez wrote her outreach letter), Pastor Fernandez stated that she had spoken with about two dozen people who were involved

in the youth ministry program, but "she declined to discuss whether any possible victims have emerged, citing confessional confidentiality."[4]

## 2. *The Discovery Dispute.*

This writ proceeding concerns a discovery dispute regarding (1) three interrogatories, and (2) five requests for production of documents.[5]

### a. *The Interrogatories.*

In March 2004, the plaintiffs served form interrogatories on the Walnut Creek church. This petition concerns three interrogatories that essentially asked for the names, telephone numbers and addresses of persons who had any information concerning the "incident," including persons who provided statements to the church about the incident.

In its initial response to the interrogatories, the Walnut Creek church raised vagueness, as well as attorney-client and attorney work product privilege objections to the interrogatories.[6] The church did not raise any privacy or clergy-penitent privilege objections.

The parties then had some "meet and confer" communications. One letter exchanged by counsel for the parties during this time seemed to indicate that three victims had come forward and advised the Walnut Creek church that they had been abused by Carson-Hull. However, the church's counsel expressed concern over the privacy rights of these third parties. In light of these concerns, counsel for the parties discussed the possibility of sending out a notice to alleged victims pursuant to *Valley Bank of Nevada v. Superior Court* (1975) 15 Cal.3d 652, 658 [125 Cal.Rptr. 553, 542 P.2d 977] (*Valley Bank*).[7]

---

[4] From the article, it appears that three men from Walnut Creek had told police they were molested by Carson-Hull.

[5] The full text of the disputed interrogatories and production requests can be found in the appendix to this opinion.

[6] The form interrogatories are somewhat ambiguous in the context of the allegations in this lawsuit. When ruling on the motions to compel at issue in this writ proceeding, the trial court concluded the interrogatories were not vague. The court adopted plaintiffs' position that the term "incident" in the interrogatories referred not only to the sexual abuse suffered by the plaintiffs, but also to the alleged sexual abuse by Carson-Hull while at the Walnut Creek church. In its writ petition, the Walnut Creek church does not challenge the trial court's determination.

[7] In that case, the Supreme Court held that a plaintiff bank could be compelled to disclose in discovery confidential information provided by certain bank customers (who were not parties to the action), but that, before the information could be disclosed, the customers should be notified and given an opportunity to object to the disclosure.

In late August 2004, the Walnut Creek church served supplemental responses to interrogatories in which it raised attorney-client, attorney work product and privacy objections to the interrogatories in question.

In a letter from counsel for the Walnut Creek church that accompanied the supplemental responses, counsel stated that Pastor Fernandez had confirmed the information she received was provided to her "confidentially as the pastor of the church." Therefore, the church was now objecting to disclosure of the information based on the clergy-penitent privilege. The letter seemed to say that the church was also objecting to the sending of a letter as described in *Valley Bank, supra*, 15 Cal.3d 652, because "correspondence to persons requesting disclosure of the information they entrusted to Pastor Fernandez confidentially would breach the relationship of trust and confidence between Pastor Fernandez and these individuals."[8]

Ultimately, plaintiffs filed a motion to compel further responses to interrogatories. In response to the privacy contention, plaintiffs noted that the right of privacy may be abridged to accommodate a compelling interest. They maintained that facilitating the ascertainment of truth in a legal proceeding is such an interest. Plaintiffs also claimed that some of the people who provided information to the church may not be victims and suggested that such persons have no privacy rights to protect. As for the attorney-client and attorney work product privileges, plaintiffs claimed they were seeking information provided to the church in response to an outreach program, not statements or information provided to the church's counsel.

In its opposition to the motion to compel, the Walnut Creek church argued that it should not be required to provide information about Carson-Hull's abuse of persons while at Walnut Creek if the church obtained that information after the plaintiffs were abused, because (1) providing the information would violate the privacy rights of third parties, (2) providing the information would violate the clergy-penitent privilege, and (3) the information is not relevant to the legal issues in the case.

In support of its opposition, the Walnut Creek church provided the declaration from Pastor Fernandez referenced above. In addition to the outreach letter, attached to the declaration was a copy of one page from the 2002 edition of a "Book of Discipline" which, according to Pastor Fernandez, contains the tenets of the United Methodist Church. The page contains the

---

[8] Considering the importance it attaches to the privilege, we find it somewhat curious that the church first raised the clergy-penitent privilege (on behalf of Pastor Fernandez) only in a letter accompanying its supplemental responses to interrogatories, and did not formally assert the privilege in either its original or supplemental responses. The plaintiffs have not claimed that the church had waived the right to assert the privilege.

following statement: "All clergy of the United Methodist Church are charged to maintain all confidences inviolate, including confessional confidences."

In a reply, the plaintiffs claimed, among other things, that the clergy-penitent privilege did not apply because there was no indication anyone communicated with Pastor Fernandez for the purpose of seeking forgiveness from sin.

### b. *The Production Request.*

Around the time plaintiffs served the form interrogatories discussed above, they also served a request for production of documents. This writ proceeding concerns five of these requests, which essentially sought all documents and electronic communications dealing with any allegations of abuse by Carson-Hull. The last two requests identified a particular person (Jeff T.) who apparently is or was a member of the Walnut Creek church and alleged that he had been abused by Carson-Hull.

In response to the production requests, the Walnut Creek church identified five specific documents in general terms (by date and sometimes also by author), but it refused to produce them, claiming they were not relevant and were protected by privacy, clergy-penitent, attorney-client, and attorney work product privileges.[9]

After various "meet and confer" communications, the plaintiffs filed a motion to compel. As to the privilege claims, the plaintiffs made the same arguments they had made regarding the interrogatories.

The Walnut Creek church filed an opposition. As for the two requests involving John T., the church claimed it had no documents responsive to them. The church asserted that the only documents at issue are (1) a July 22, 2002 letter that Pastor Fernandez had sent to Reverend Stewart, Fernandez's supervisor, who was a member of a crisis management team of the California Nevada Annual Conference (a regional governing body of the United

---

[9] The five were "May 24, 2002 correspondence from Bishop Shamana, May 28, 2002 correspondence from Pastor Rene-Extrum Fernandez; March 28, 2003 letter to congregation; October 30, 2002 correspondence from Reverend Rene-Extrum Fernandez; July 22, 2002 correspondence from Reverend Rene-Extrum Fernandez . . . ." It appears that some of these documents were produced by the church on one or more occasions before the hearing on the motion to compel.

Methodist Church); and (2) an unknown quantity of unspecified documents produced confidentially to Pastor Fernandez by third parties.[10]

As to the July 22, 2002 letter, Pastor Fernandez explained in a declaration that she was asked to "participate in" the crisis management team referenced in the previous paragraph to address issues relating to the church's potential liability for Carson-Hull's acts. The committee also included one attorney, Jay Rosenlieb. Pastor Fernandez explained that on July 22, 2002, she prepared correspondence to Reverend Stewart and that it was her "expectation, intention and belief that this July 22 correspondence would be passed onto [sic] the Bishop of the Annual Conference and to Attorney Jay Rosenlieb as the attorney for the Annual Conference and with whom this declarant and the Bishop's office had been jointly communicating concerning the issues surrounding Gary Carson Hull. This correspondence was intended to remain confidential and not disclosed to persons other than members of the Conference Committee, including Attorney Jay Rosenlieb." She offered no information regarding the contents of the letter.

In a reply, the plaintiffs argued that no privilege would attach to any factual statements obtained from witnesses that may have been included in the information Pastor Fernandez provided to the committee.

### 3. The Trial Court's Ruling.

A hearing on both motions to compel took place on November 18, 2004. Although the court purported to reject the clergy-penitent privilege contention, it never determined whether the communications to Pastor Fernandez were "penitential communication[s]," as that term is defined in section 1032. Instead, the court concluded the privilege did not apply because (1) the term "incident" in the discovery requests was not ambiguous, and (2) the statements would be disclosed to plaintiffs' counsel subject to a protective order. The court rejected the privacy contention because it believed there was a compelling interest warranting disclosure.

Turning to the production request, the court appeared to conclude that the July 22, 2002 letter from Pastor Fernandez was not protected by the attorney-client privilege because it was not sent, or even copied, to an attorney.

The court granted the motions, subject to a protective order to be drafted by the parties. At the same time, however, the court authorized the church to

---

[10] Besides asserting that documents were provided to Pastor Fernandez "confidentially," the church offered no information concerning the nature of the documents in question or the circumstances under which the documents were given to Pastor Fernandez.

withhold documents over which it was asserting an attorney-client privilege.[11] It appears the court excepted Pastor Fernandez's July 22, 2002 letter from the documents over which the church could assert the privilege, but this is not entirely clear.

### 4. *The Writ Petition.*

The Walnut Creek church filed a writ petition challenging the trial court's order. The church claims that compelling responses to the interrogatories and to the production of documents containing statements obtained from third parties violates the clergy-penitent privilege and the privacy rights of those third parties. It claims that compelling production of Pastor Fernandez's July 22, 2002 letter violates the attorney-client privilege.

After receiving the petition we temporarily stayed the trial court's order. We later issued an order to show cause, received additional briefing, and heard oral argument. After oral argument, we invited and received additional briefing concerning the scope of the clergy-penitent privilege.

## DISCUSSION

### 1. *Standard of Review.*

"We review discovery orders under the abuse of discretion standard, and where the petitioner seeks relief from a discovery order that may undermine a privilege, we review the trial court's order by way of extraordinary writ. (*Kleitman v. Superior Court* (1999) 74 Cal.App.4th 324, 330 [87 Cal.Rptr.2d 813].) 'Where there is a basis for the trial court's ruling and it is supported by the evidence, a reviewing court will not substitute its opinion for that of the trial court. [Citation.] The trial court's determination will be set aside only when it has been demonstrated that there was "no legal justification" for the order granting or denying the discovery in question. [Citations.]' (*Lipton v. Superior Court* (1996) 48 Cal.App.4th 1599, 1612 [56 Cal.Rptr.2d 341].) We defer to the court's factual findings concerning privilege if they are supported by substantial evidence." (*Scripps Health v. Superior Court* (2003) 109 Cal.App.4th 529, 533 [135 Cal.Rptr.2d 126], original brackets.) Where the facts are undisputed, the privilege claim is one of law which is reviewed de novo. (See *Sierra Vista Hospital v. Superior Court* (1967) 248 Cal.App.2d 359, 364–365 [56 Cal.Rptr. 387].)

---

[11] The written order submitted by plaintiffs and signed by the court erroneously states that the church would be able to assert the "priest-penitent privilege." As reflected in the reporter's transcript, the court referred only to the attorney-client privilege.

2. *The Order Compelling Further Responses to Interrogatories and Production of Documents Provided to Pastor Fernandez by Third Parties.*

 a. *The Clergy-penitent Privilege.*

The trial court rejected the church's assertion of the clergy-penitent privilege, which the church raised in connection with the motion to compel further responses to interrogatories and the motion to compel production of documents to the extent those documents contained communications provided to Pastor Fernandez by third parties.

"[A] member of the clergy, whether or not a party, has a privilege to refuse to disclose a *penitential communication* if he or she claims the privilege." (§ 1034, italics added.) Thus, the key question is whether the communications to Pastor Fernandez were "penitential communication[s]."

■ Section 1032 defines "penitential communication" as "a communication made in confidence, in the presence of no third person so far as the penitent is aware, to a member of the clergy who, in the course of the discipline or practice of the clergy member's church, denomination, or organization, is authorized or accustomed to hear those communications and, under the discipline or tenets of his or her church, denomination, or organization, has a duty to keep those communications secret."[12]

A "penitent" is "a person who has made a penitential communication to a member of the clergy." (§ 1031.)

■ Based on the above, "[i]n order for a statement to be privileged, it must satisfy all of the conceptual requirements of a penitential communication: 1) it must be intended to be in confidence; 2) it must be made to a member of the clergy who in the course of his or her religious discipline or practice is authorized or accustomed to hear such communications; and 3) such member of the clergy has a duty under the discipline or tenets of the church, religious denomination or organization to keep such communications secret." (*People v. Edwards* (1988) 203 Cal.App.3d 1358, 1362–1363 [248 Cal.Rptr. 53].)

---

[12] This definition is considerably broader than the one in effect until 1967. The Law Revision Commission Comments state that the current definition was meant to broaden the protection afforded penitent communications, which traditionally was limited only to confessions. (See Cal. Law Revision Com. com., 29B West's Ann. Evid. Code (1995 ed.) foll. § 1032, p. 359 ["Under existing law, the communication must be a 'confession.' Code Civ. Proc., § 1881(3) (superseded by the Evidence Code). Section 1032 extends the protection that traditionally has been provided only to those persons whose religious practice involves 'confessions' "].)

In this case, rather than consider whether these three requirements were met, the trial court concluded the privilege did not apply because (1) the term "incident" in the discovery requests was not ambiguous, and (2) the statements would be disclosed to plaintiffs' counsel subject to a protective order.

The assertion that the privilege does not apply because the interrogatories were not ambiguous is a non sequitur. The issue is not whether the interrogatories were ambiguous, but whether the communications were penitential.

■ The existence of a protective order is also irrelevant to the question whether the communications were penitential. If the privilege applies, a court cannot compel disclosure, regardless whether a protective order is imposed. (See *In re Lifschutz* (1970) 2 Cal.3d 415, 427–429 [85 Cal.Rptr. 829, 467 P.2d 557] [referring to "absolute" nature of clergy-penitent privilege].)

■ "A trial court abuses its discretion when it applies the wrong legal standards applicable to the issue at hand." (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 85 [87 Cal.Rptr.2d 754].) That is what occurred in this case. Therefore, the trial court's order must be vacated and the matter remanded for the trial court to reconsider the privilege claim based on the correct legal standards. ■ On remand, if the court believes it would be helpful, it may conduct an evidentiary hearing. (See Cal. Rules of Court, rule 323(a) [if there is good cause, court has discretion to order evidentiary hearing in law and motion matter].)

Before concluding our discussion of this issue, we discuss some important principles concerning the scope of the clergy-penitent privilege, which we hope will be of guidance to the trial court on remand.

■ First, because section 1031 defines a penitent as any person who has made a penitential communication to a member of the clergy, and because a penitential communication as defined in section 1032 contains no special requirement regarding the person making the communication, it follows that "the penitent is not required to be a member of any particular church or of the faith of the clergy member to whom he or she makes the penitential communication."[13] (2 Jefferson, Cal. Evidence Benchbook, *supra*, § 39.5, p. 884.) Thus, the clergy-penitent privilege may apply to communications to Pastor Fernandez by persons who were not members of the United Methodist Church.

---

[13] Of course, "[a] requirement that a penitent be a member of the church of the clergy member might be imposed . . . if the discipline of that church limits the clergy member's authority to receive penitential communications to church members only." (2 Jefferson, Cal. Evidence Benchbook (Cont.Ed.Bar 3d ed. 2005) Privileges, § 39.5, p. 884.)

██ Second, the privilege may apply only if the statements were "made in confidence, *in the presence of no third person* so far as the penitent is aware." (§ 1032, italics added.) In this case, Pastor Fernandez noted in her declaration that she "held a weekend retreat to provide religious and spiritual healing to persons affected by Gary Carson-Hull." To the extent any participant in that retreat made statements to Pastor Fernandez in the presence of other partici- pants, such statements would not be protected from disclosure by virtue of the clergy-penitent privilege because of the presence of other persons. On remand, the trial court may wish to obtain additional information regarding the circumstances under which the communications were made.

██ Third, as discussed *ante,* "[i]n order for a statement to be privi- leged, . . . it must be intended to be in confidence . . . ." (*People v. Edwards, supra,* 203 Cal.App.3d at pp. 1362–1363; see also § 1032 [penitential com- munication is "communication made in confidence"]; *Roman Catholic Archbishop of Los Angeles v. Superior Court* (2005) 131 Cal.App.4th 417, 445 [32 Cal.Rptr.3d 209] ["The fact both parties to the original communication knew it likely would be transmitted to a third person vitiated *ab initio* any privilege under Evidence Code section 1032, or, alternatively, constituted a waiver of the privilege under Evidence Code section 912, subdivision (a)"].) Therefore, even if third parties are not physically present at the time of the communication, the privilege may still be inapplicable if the penitent does not intend for the contents of the communication to be kept in confidence. In this case, Pastor Fernandez's declaration asserts that the people who communi- cated with her about the Carson-Hull matter did so "confidentially," but she does not provide the factual basis for this assertion. On remand, the trial court may wish to inquire about this issue.

██ Fourth, contrary to plaintiffs' assertion, there is no requirement that a communication "have as its purpose the confession of a 'flawed act' to 'receive religious consolation and guidance in return' " in order to be privileged. As discussed *ante,* although the statutory definition of "penitential communication" that was in effect until 1967 required a "confession," the statutory definition in effect since that time contains no such limitation. (See § 1032.) The Law Revision Commission comments state that the current definition was meant to broaden the protection afforded penitent communica- tions. (See Cal. Law Revision Com. com., 29B West's Ann. Evid. Code (1995 ed.) foll. § 1032, p. 359 ["Under existing law, the communication must be a 'confession.' [Citation.] Section 1032 extends the protection that tradi- tionally has been provided only to those persons whose religious practice involves 'confessions' "].) Therefore, "[a]s long as the discipline or practice of a church authorizes a member of the clergy to hear particular communica- tions and imposes a duty of secrecy on the clergy member for such communications, a communication is privileged from disclosure even though

it is not a confession." (2 Jefferson, Cal. Evidence Benchbook, *supra*, § 39.6, p. 884; see also Note, *Forgive Us Our Sins: The Inadequacies of the Clergy-Penitent Privilege* (1998) 73 N.Y.U. L.Rev. 225, 233 ["Half (twenty-five) of the clergy-penitent privilege statutes create a privilege covering 'any confidential communication made to [a member of the clergy] in his professional character.' Such broad statutes encompass all confidential communication between a cleric and a penitent, so long as the cleric is listening to the penitent in his official capacity as a cleric. This definition does not require, however, that the communication in question be penitential in nature. Eleven states restrict the privilege to 'statement[s] made to [clergymen] under the sanctity of a religious confessional' or statements made within the 'course of discipline enjoined by [his] church.' " (First and third brackets in original, fns. omitted.)])

■ In support of their position that a penitential communication must be in the nature of a confessions, plaintiffs cite the definition of "penitential" from Webster's New Collegiate Dictionary. However, in section 1032, the Legislature has defined the term "penitential communication." There is no need to resort to other sources to define the term, especially where the outside source would alter the Legislature's definition (which, as discussed above, contains no requirement that the communication be confessional in nature).

The three cases upon which plaintiffs rely also do not support their position. While the Court of Appeal in *People v. Edwards*, *supra*, 203 Cal.App.3d 1358, upheld a ruling that the clergy-penitent privilege did not apply to a particular communication that was not confessional in nature, it did so because there was evidence the discipline of the church in question did not require the clergy member to keep secret such a "secular confidence." (See *id.* at pp. 1363–1365.) In *People v. Johnson* (1969) 270 Cal.App.2d 204 [75 Cal.Rptr. 605], the Court of Appeal held that statements a fleeing crime suspect made to a clergy member whom the suspect encountered by chance were not privileged because, among other things, "there [wa]s no evidence to show that [the clergy member] was authorized or accustomed to hear such communications, or that he had a duty to keep any such communications secret under the discipline, practice or tenets of his church." (*Id.* at p. 208.) There is nothing in the opinion even remotely suggesting the court believed the privilege did not apply because the defendant's statements were not confessional in nature. Finally, in *People v. Thompson* (1982) 133 Cal.App.3d 419 [184 Cal.Rptr. 72], the Court of Appeal held the trial court had properly admitted oral and written communications made by the defendant to a member of the Church of Scientology who was not ordained as an "auditor" or minister of the Church of Scientology. The court reached its conclusion because the person to whom defendant communicated was not a member of the clergy and because there was no expectation of confidentiality. (*Id.* at pp. 426–427.) It is true that the Court of Appeal quoted the following passage

from a United States Supreme court decision: " 'The priest-penitent privilege recognizes the human need to disclose to a spiritual counselor, in total and absolute confidence, what are believed to be flawed acts or thoughts and to receive priestly consolation and guidance in return.' " (*Id.* at p. 427, quoting *Trammel v. United States* (1980) 445 U.S. 40, 51 [63 L.Ed.2d 186, 195, 100 S.Ct. 906, 913].) However, the United States Supreme Court was not purporting to interpret California's clergy-penitent privilege. (Indeed, the case in which the statement was made did not even involve a clergy-penitent privilege claim.) Any attempt to introduce a confessional element into section 1032 would be contrary to the clear statutory language and the legislative history, which reflects that the Legislature made a conscious decision to eliminate such a requirement.

All these are matters the trial court will have to consider on remand. We express no opinion on how the court should resolve them. We note, however, that nothing in this opinion precludes the plaintiffs from seeking to obtain information about Carson-Hull's alleged sexual abuse while at the Walnut Creek church in a manner that would not implicate the clergy-penitent privilege. For example, plaintiffs could ask the church to provide them with the names of all persons who participated in the youth ministry while Carson-Hull was involved in the ministry. Although the issue is not before us and we do not purport to decide it, it would seem that such a request would not implicate the clergy-penitent privilege.

b. *The Privacy Rights of Third Parties.*

The church also invoked the privacy rights of the third parties who communicated with Pastor Fernandez.

■ "A party to an action may assert the privacy rights of third parties. (See *Valley Bank of Nevada v. Superior Court* (1975) 15 Cal.3d 652, 657 [125 Cal.Rptr. 553, 542 P.2d 977].) In such event, the third party has a right to notice and an opportunity to be heard. (*Id.* at p. 658.)" (*Weingarten v. Superior Court* (2002) 102 Cal.App.4th 268, 278 [125 Cal.Rptr.2d 371].)

■ In this case, it is true that the privacy rights of third parties may be implicated. Indeed, the plaintiffs do not claim otherwise, though they argue (correctly) that "[t]he constitutional right to privacy is not absolute. [Citations.] It may be outweighed by supervening concerns. [Citation.] The state has enough of an interest in discovering the truth in legal proceedings, that it may compel disclosure of confidential material." (*Palay v. Superior Court* (1993) 18 Cal.App.4th 919, 933 [22 Cal.Rptr.2d 839].) However, before a court can make such a determination, it must afford the parties whose privacy rights are at issue an opportunity to present their views.

Thus, if after remand the trial court rejects the church's clergy-penitent privilege assertion regarding the communications by third parties to Pastor Fernandez, these third parties must be formally notified of the proceedings and afforded a fair opportunity to assert their privacy interests by objecting to the disclosure—in whole or in part—or asserting possible alternative ways to protect their privacy rights.[14]

### 3. *Pastor Fernandez's July 22, 2002 Letter to Reverend Stewart.*

The church claims the trial court abused its discretion in compelling it to produce Pastor Fernandez's July 22, 2002 letter to Reverend Stewart. It insists that the letter is a privileged attorney-client communication. We cannot say the trial court abused its discretion in rejecting this contention.

 "The attorney-client privilege is 'a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer.' (Evid. Code, § 954.)" (*People v. Coddington* (2000) 23 Cal.4th 529, 605 [97 Cal.Rptr.2d 528, 2 P.3d 1081].) " '[C]onfidential communication between client and lawyer' means information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than *those who are present to further the interest of the client in the consultation* or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship." (§ 952, italics added.) "Those 'who are present to further the interest of the client in the consultation' include a spouse, parent, business associate, joint client or any other person 'who may meet with the client and his attorney in regard to a matter of joint concern.' (Cal. Law Revision Com. com. to Evid. Code, § 952, 29B West's Ann. Evid. Code (1966 ed.) pp. 528–529; Deering's Ann. Evid. Code (1966 ed.) p. 444.)" (*Benge v. Superior Court* (1982) 131 Cal.App.3d 336, 346 [182 Cal.Rptr. 275].)

It is undisputed that Pastor Fernandez did not transmit the letter to an attorney. Indeed, she did not even copy the letter to an attorney. Rather, the letter was sent to Reverend Stewart.

The church notes that Pastor Fernandez stated in her declaration that it was her "expectation, intention and belief that this July 22 correspondence would

---

[14] Such notices should not be sent out before a final ruling has been made regarding the church's clergy-penitent privilege contention. If there is a final ruling to the effect that the privilege applies, that ruling will obviate the need to send out notices to the third parties.

be passed onto [*sic*] the Bishop of the Annual Conference and to Attorney Jay Rosenlieb as the attorney for the Annual Conference and with whom this declarant and the Bishop's office had been jointly communicating concerning the issues surrounding Gary Carson Hull." However, Pastor Fernandez did not explain why she did not transmit the letter to Attorney Rosenlieb directly.

 "[T]he party claiming the attorney-client privilege as a bar to disclosure has the burden of showing that the communication sought to be suppressed falls within the parameters of the privilege." (*Scripps Health v. Superior Court, supra,* 109 Cal.App.4th at p. 533.) "It is also established that a communication which was not privileged to begin with may not be made so by subsequent delivery to the attorney." (*Alpha Beta Co. v. Superior Court* (1984) 157 Cal.App.3d 818, 825 [203 Cal.Rptr. 752].)

As the reviewing court, we cannot say the trial court abused its discretion in concluding that the letter was not a privileged attorney-client communication.

## DISPOSITION

The petition for writ of mandate is granted in part. The respondent court is directed to vacate its November 18, 2004 order granting the motions of real parties in interest to compel further responses to form interrogatories (set one) and to compel further responses to a request for identification, inspection and production of documents, and to thereafter reconsider the motions in a manner consistent with the views expressed herein. The parties are to bear their own costs in this writ proceeding. (Cal. Rules of Court, rule 56 (*l*)(2).)

Rubin, J., and Boland, J., concurred.